Obie Allen THOMPSON, Appellant,

v.

TEXAS DEPARTMENT OF FAMILY
AND PROTECTIVE SERVICES,
Appellee.

No. 01–04–00082–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Oct. 28, 2004.

Rehearing Overruled March 9, 2005.

William B. Connolly, William B. Connolly & Associates, Houston, for Appellant.

Francisca Aguirre–Saldana, Asst. County Atty., Houston, for Appellee.

Panel consists of Chief Justice RADACK and Justices KEYES and ALCALA.

## OPINION

EVELYN V. KEYES, Justice.

The father, Obie Allen Thompson, appeals the termination of his parental rights to his child, M.W.D. In three issues, the father challenges the legal and factual sufficiency of the evidence to sustain termination of his parental rights under sections 161.001 and 161.004 of the Family Code. We affirm.

### Facts

M.W.D. was born in August 1995. In December 2002, the trial court entered a decree in the Texas Department of Protective and Regulatory Services's (TDPRS's) [1] suit to terminate the parental rights of the biological mother and fathers in regard to M.W.D., D.L.M., and J.M.H. [2] The trial court awarded managing conservatorship to TDPRS and possessory conservatorship of M.W.D. to the parents, but did not terminate the parents' rights as to him. Instead, it ordered both the mother and the father to comply with a family service plan. Appellant, the father, was in prison at the time, having been sentenced in March 1998 to serve a 10–year sentence after violating the conditions of his community supervision for aggravated sexual assault by committing a robbery and failing to report to his probation officer. Before the father was incarcerated, at least one referral had been made to TDPRS alleging physical abuse of M.W.D.

The father's plan required him to (1) participate in and complete parenting classes; (2) participate in and complete a substance abuse assessment and follow recommendations; (3) participate in random urinalysis if paroled out of prison; (4) participate in and complete anger management classes; (5) participate in sexual abuse counseling; (6) participate in sexual abuse perpetrators' classes and/or sexual perpetrators' group therapy; and (7) participate in and complete domestic violence perpetrators' classes and/or domestic violence perpetrators' group therapy. The decree specified that if these services were not available to the father in prison, or if the father was released from prison, TDPRS would provide those services that were "still required" to achieve the goal of family reunification. Regardless, the father was ordered to obtain these services.

The caseworker testified that she sent the father the family service plan, with a letter explaining it, and provided contact information. After the father signed and returned the plan, the caseworker sent him another letter advising him to mail information to her regarding his attempts to comply with the court's order and service plan. The father sent one letter to the TDPRS caseworker in which he stated his intention to attend the appropriate classes, but he never contacted her again. Neither the caseworker nor the child advocate investigated whether the prison provided any of the classes the father was ordered to complete or whether he completed any of them.

---

1. "A reference in law to the Department of Protective and Regulatory Services means the Department of Family and Protective Services." Act of June 1, 2003, 78th Leg., R.S., § 1.27, 2003 Tex. Gen. Laws 611, 641.

2. Appellant is not the biological father or either D.L.M. or J.M.H., and no appeal has been brought in regard to these children.

In the year following the court's decree, neither the mother nor the father complied with the family service plan, the father's request for parole was denied, and the child showed improvement in his behavior while in therapeutic foster care. When TDPRS petitioned a second time to terminate parental rights in December 2003, the trial court terminated both parents' rights and this appeal ensued. The mother has since abandoned the appeal; thus, we consider the termination only in regard to M.W.D., the father's biological child.

## Termination of Parental Rights

After an earlier petition to terminate parental rights has been denied, the trial court may terminate parental rights under section 161.004 of the Family Code, which provides:

(a) The court may terminate the parent-child relationship after rendition of an order that previously denied termination of the parent-child relationship if:

(1) the petition under this section is filed after the date the order denying termination was rendered;

(2) the circumstances of the child, parent, sole managing conservator, possessory conservator, or other party affected by the order denying termination have materially and substantially changed since the date that the order was rendered;

(3) the parent committed an act listed under Section 161.001 before the date the order denying termination was rendered; and

(4) termination is in the best interest of the child.

(b) At a hearing under this section, the court may consider evidence presented at a previous hearing in a suit for termination of the parent-child relationship of the parent with respect to the same child.

TEX. FAM.CODE ANN. § 161.004(a),(b) (Vernon 2002).

Subsection 161.004(a)(3) is satisfied by a finding by the court under section 161.001 of the Family Code, based on clear and convincing evidence, that, prior to an order denying termination,

(1) the parent has:

. . . .

(L) been convicted or has been placed on community supervision, including deferred adjudication community supervision, for being criminally responsible for the death or serious injury of a child under the following sections of the Penal Code or adjudicated under Title 3 for conduct that caused the death or serious injury of a child and that would constitute a violation of one of the following Penal Code sections:

. . . .

(viii) Section 22.021 (aggravated sexual assault);

. . . .[or]

(O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the [TDPRS] for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child; [or]

. . . .

(Q) knowingly engaged in criminal conduct that has resulted in the parent's:

(I) conviction of an offense; and

(ii) confinement or imprisonment and liability to care for the child for not less than two years from the date of filing the petition;

... and

(2) that termination is in the best interest of the child.

Tex. Family Code Ann. § 161.001 (Vernon 2002).

In three issues on appeal, the father contends the evidence was legally and factually insufficient to show (1) that there was a previous ground for termination, (2) that there was a material and substantial change of circumstance, and (3) that he did not comply with the court's order establishing the actions necessary for him to obtain the return of M.W.D.

### Standard of Review

■■■ In all proceedings to terminate the parent-child relationship, the State bears the burden to prove its case by clear and convincing evidence. *See In re G.M.,* 596 S.W.2d 846, 847 (Tex.1980). On appeal, we must determine whether the evidence was such that a fact-finder could reasonably have formed a firm belief or conviction about the truth of the State's allegations. *In re C.H.,* 89 S.W.3d 17, 25 (Tex.2002).

■■■ We review the evidence in the light most favorable to the trial court's ruling to determine whether it is legally sufficient. *In re J.F.C.,* 96 S.W.3d 256, 266 (Tex.2002). To determine whether the evidence is factually sufficient, we consider whether, in light of the entire record, the disputed evidence is so significant that the fact-finder could not reasonably have formed a firm belief or conviction about the truth of the allegations. *Id.* at 266–67.

### Grounds for Appeal

As a threshold matter, we reject the father's argument that the trial court's only basis for termination was under Family Code section 161.001(1)(O) because this was the only ground for termination recited in the judgment. *See* Tex. Family Code § 161.001(1)(O)(parent failed to comply with provision of court order establishing actions necessary to parent to obtain return of child).

■■■ Findings of fact and conclusions of law shall not be recited in a judgment and, if they are, they cannot form the basis of a claim on appeal. *See Frommer v. Frommer,* 981 S.W.2d 811, 814 (Tex.App.-Houston [1st Dist.] 1998, pet. dism'd). Thus, the recitation in the judgment that the father failed to comply with the family service plan cannot be the basis of the father's appeal; rather, the basis of the appeal is the insufficiency of the evidence to support the trial court's judgment. When, as here, the trial court makes no findings of fact, we presume the trial court made all the findings necessary to support its judgment. *Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex.1990). If any legal theory is supported by the judgment, we must affirm. *Id.; Frommer,* 981 S.W.2d at 814. Therefore, we must determine whether the evidence was legally and factually sufficient to support the judgment terminating the father's parental rights.

### Sufficiency of the Evidence

The second petition was filed a year after the order denying termination was rendered, thus the first statutory element for termination under section 161.004 of the Family Code is satisfied. *See* Tex. Fam.Code Ann. § 161.004(a)(1) (petition must be filed after rendition of order denying termination). The father was convicted of aggravated sexual assault under section 22.021 of the Penal Code; thus the third statutory element is satisfied. *See* Tex. Fam.Code Ann. § 161.001(L)(viii) (enumerating acts committed by a parent that would allow involuntary termination of parental rights, including conviction for aggravated sexual assault); *see also* § 161.004(a)(3) (requiring proof that par-

ent committed act enumerated under section 161.001 before order denying termination was rendered). We thus examine the evidence of the remaining elements identified in section 161.004—whether there has been a material and substantial change in circumstance and whether termination is in the child's best interest—to determine whether the evidence was legally and factually sufficient to terminate the father's parental rights.

## Material & Substantial Change in Circumstances

Although the father contends there have been no material and substantial changes in circumstances since the original petition was denied, the record shows that there have been such changes to the circumstances of the father, the mother, and the child—all of which are relevant under the statute. *See* TEX. FAM. CODE ANN. § 161.004(a) (specifying that circumstances may change as to child, parent, or "any other party" affected). The mother has been unable to follow the service plan, and her rights have been terminated. The change in the mother's circumstances is relevant to the child's circumstances because there is now no possibility of the child and both parents being reunited in a suitable home. It is also relevant because, as the father is in prison, he is in no position to care for the child without the mother, and he has provided no evidence that other family members can and will care for the child. Although incarceration alone will not support a termination of parental rights, the Family Code provides that termination may result if the court finds that a parent knowingly engaged in criminal conduct that resulted

in conviction and confinement for more than two years and an inability to care for the child. *See* TEX. FAM. CODE ANN. § 161.001(1)(Q); *In re Caballero*, 53 S.W.3d 391, 395 (Tex.App.-Amarillo 2001, pet. denied).

Here, the father violated the terms of his community supervision, resulting in his imprisonment for more than two years for his original offense, beginning in March 1998. In addition, the father's application for parole has been rejected; thus, his imprisonment extended beyond two years for that offense. By looking at future imprisonment and inability to care for the child, Family Code subsection 161.001(1)(Q) protects children whose parents will be incarcerated for periods exceeding two years after termination proceedings begin; thus, we apply this statute prospectively. TEX. FAM. CODE ANN. § 161.001(1)(Q); *see also In re A.V.*, 113 S.W.3d 355, 361 (Tex.2003).

Although the father suggests in his reply brief that he was under no obligation to make arrangements for his child because the child is in TDPRS conservatorship, nothing in the statute relieved him of his responsibility to make arrangements for his child merely because he was in prison and the child was in TDPRS conservatorship; nor does this fact alter the fact that family circumstances have changed, including termination of M.W.D.'s mother's parental rights. M.W.D.'s progress in foster care is also a change in circumstance because it has readied him for a more permanent placement.[3]

Finally, the record shows that the father has not complied with his service

---

**3.** Contrary to the father's assertion, the fact that potential adoptive parents have not yet been identified is not a controlling factor. *See Holley v. Adams,* 544 S.W.2d 367, 371

(Tex.1976) (noting that lack of evidence about specific adoption plans not determinative of child's best interest).

plan. The court's order appointing him possessory conservator and establishing a family service plan for him plainly placed the burden on the father to participate in and complete parenting classes; participate in and complete a substance abuse assessment and follow recommendations; participate in random urinalysis if paroled out of prison; participate in and complete anger management classes; participate in sexual abuse counseling; participate in sexual abuse perpetrators' classes and/or sexual perpetrators' group therapy; and participate in and complete domestic violence perpetrators' classes and/or domestic violence perpetrators' group therapy. Although the father argues on appeal that the agency did not investigate whether the classes were available or otherwise determine whether he complied with his service plan, the trial court's order plainly placed the burden on him to comply with the order, whether or not he was incarcerated; it did not place the burden on the TDPRS to ensure his compliance.

In a similar case, the Amarillo court refused to place the burden on TDPRS to disprove the existence of anyone with whom defendant's child could be placed during his incarceration because adopting such a rule would place an unreasonable burden on the agency and judicial resources. *See Caballero*, 53 S.W.3d at 396 ("The better reasoned rule is that once the Department has established a parent's knowing criminal conduct resulting in their incarceration for more than two years, the parent must produce some evidence as to how the parent would provide or arrange to provide care for the child during that period. When that burden of production is met, the Department would have the burden of persuasion that the arrangement would not satisfy the parent's duty to the child.").

We agree with the Amarillo court's logic and consider it analogous here. *See id.* To require TDPRS to continually inquire as to a prisoner's efforts and accomplishments in regard to a service plan is not reasonable. Once the caseworker and child advocate testified that the father had not contacted the agency or provided any evidence of his compliance with the service plan, it became his burden to rebut this evidence. As he did not, the evidence of his noncompliance was sufficient.

Because each of the conditions with which the father failed to comply was a condition precedent to maintaining possessory conservatorship imposed by the court's December 2002 decree denying termination of parental rights at that time, the evidence that the father did not comply with the court-ordered plan is necessarily indicative of a change in circumstance between the time the prior order was entered and the time this suit was filed seeking termination of appellant's parental rights after denial of the prior petition to terminate. *See* Tex. Family Code Ann. § 161.004(a)(2). Before the court imposed the service plan in its December 2002 decree, the father had no obligation to undertake these corrective steps. We hold that TDPRS met its burden to prove by clear and convincing evidence that circumstances had materially and substantially changed in regard to the entire family during the year following the original order denying termination and the second order terminating the father's parental rights.

### Best Interest of the Child

Without actually addressing any particulars regarding the child's best interest, the father simply contends that no evidence was presented, other than some improvement in the child's behavior, to show that termination was in the child's best interest. We cannot agree.

In *Holley v. Adams*, the Texas Supreme Court identified several factors to be used to determine what is in a child's best interest. 544 S.W.2d 367, 372 (Tex. 1976). While these factors are neither exclusive nor exhaustive, they are certainly instructive, and include: the child's desires; the child's current and future emotional and physical needs; current and future physical and emotional danger to the child; the parental abilities of persons seeking custody; programs available to assist those persons seeking custody; plans for the child; the stability of the child's placement; the parent's acts or omissions indicating that the parent-child relationship is not a proper one; and any excuse for the parent's acts or omissions. *Id.*

Here, the child has been in foster care since he was two years old, and is still at a young enough age where adoption is more feasible. The State urges this Court to conclude that termination was in the child's best interest because it contends that (1) the father's criminal acts jeopardized M.W.D.'s well being; (2) his failure to comply with the service plan shows the parent-child relationship is not proper; (3) there are no programs that can prevent the father from committing criminal acts in the future or force him to comply with the service plan; (4) there is no evidence that the father was involved in the child's life before he went to prison or evidence that the child knows or asks about his father; (6) the child is happy and adjusting well in foster care; (7) because he has attention-deficit disorder, the child has special needs that the father cannot address; and (8) the father has done nothing while in prison to provide financial or emotional support to the child or to make arrangements for his continued care. We conclude, based on *Holley*, that, given the child's current and future emotional and physical needs, the father's incarceration, lack of parenting skills, and noncompliance with the service plan, the child's special needs, and the stability of the child's placement, TDPRS met its burden, and the trial court did not err in determining that termination was in the child's best interest.

When we view all of the foregoing evidence in the light most favorable to the trial court's ruling, we conclude that the evidence was such that a fact-finder could have reasonably formed a firm belief or conviction about the truth of the State's allegations. Thus, the evidence was legally sufficient to sustain the termination.

When we view the record as a whole, as required in a factual-sufficiency review, we can only reach the same conclusion as to the factual sufficiency of the evidence, primarily because the father did not present any controverting evidence—he simply relied on his assertion that TDPRS had a duty to inquire as to whether he complied with the service plan, an assertion we have rejected. We therefore hold that the evidence was factually sufficient to sustain termination of the father's parental rights.

## Conclusion

We overrule all issues presented.

We affirm the trial court's judgment.