Opinion issued August 3, 2006






 












In The
Court of Appeals
For The
First District of Texas




NO. 01-05-00307-CV
____________

KOVEY AMANETTE CERVANTES-PETERSON AKA KOVEY
PETERSON CERVANTES AKA KOVEY TURNER CERVANTES,
Appellant

V.

TEXAS DEPARTMENT OF FAMILY & PROTECTIVE SERVICES,
Appellee




On Appeal from the 314th Judicial District Court
Harris County, Texas
Trial Court Cause No. 2005-26544
 

 
 
EN BANC OPINION
          In this accelerated appeal,


 appellant, Kovey Amanette Cervantes-Peterson
a/k/a Kovey Peterson Cervantes a/k/a Kovey Turner Cervantes (“Cervantes”),
challenges the trial court’s decree, entered after a bench trial, terminating her parental
rights to her minor child, J.M. In her first and second issues, Cervantes contends that
the evidence is legally and factually insufficient to support the trial court’s findings
that she engaged in conduct or knowingly placed J.M. with persons who engaged in
conduct which endangered the physical or emotional well-being of J.M.


 and that
termination of the parent-child relationship between Cervantes and J.M. was in J.M.’s
best interest.


 In her third issue, Cervantes contends that her Fourteenth Amendment



right of due process of law was violated when the trial court ordered her parental
rights terminated. In her fourth issue, Cervantes contends that the trial court erred in
naming the Texas Department of Family and Protective Services (“DFPS”) as the sole
managing conservator of J.M.
          We affirm.
 
Factual and Procedural BackgroundOn July 15, 2004, DFPS filed a petition for conservatorship and to terminate
Cervantes’s parental rights to her son, J.M., alleging that Cervantes gave birth to J.M.
with cocaine in his blood. J.M. was about six months old when the trial commenced,
and he had been in the care of DFPS since his birth. 
          Cervantes testified that she has three other children, D.B., N.C., and B.C. 
Cervantes was also expecting a fifth child at the time of trial. She explained that
DFPS is the conservator for N.C., B.C., and J.M. Like J.M., N.C. and B.C. were both
born with cocaine in their blood. After N.C. and B.C. had tested positive for cocaine,
Cervantes attended required counseling concerning the use of narcotics. Cervantes
had successfully completed a drug rehabilitation program after the birth of B.C. and
nearly completed another program after the birth of N.C. Cervantes stated that she
had not used cocaine “until right before” she had J.M. and that the narcotics use
probably occurred around the ninth month of her pregnancy. 
          Since J.M.’s exposure to cocaine was discovered, Cervantes explained that she
had been trying to get help with her narcotics problem but had a difficult time getting
into various programs. Cervantes explained that the “Choices” drug rehabilitation
program recommended by her caseworker was overcrowded. She stated that, on two
occasions in the past two or three months, she had waited in line early in the morning,
but was turned away when the program had become full. Cervantes also stated that
she had attempted to enroll in two other programs, including one where she had
previously completed drug rehabilitation, but both programs would not accept her
because she no longer qualified for Medicaid.
          At the time of the trial, Cervantes had not taken a random narcotics test in six
months. She testified that she was not currently using narcotics and had not used
narcotics in “a long time,” explaining that she had last used narcotics around the time
of J.M.’s birth. However, Cervantes later admitted that she had used marijuana “like
two months ago,” but stated that marijuana was the only narcotic that she had used
since J.M.’s birth. She agreed that this meant she had used marijuana during her
current pregnancy, but explained that, at that time, she was unaware that she was
pregnant. 
          Cervantes visited J.M. four or five times since he was placed in the care of
DFPS. She conceded that she had been late to some of her appointments with him
because “it’s so far away from [her] home.” Cervantes explained that she has her
General Education Diploma, is currently in school, and intends to obtain a certificate
to work in the medical field. Cervantes lives with her mother and has been living
there since her grandmother died. She stated that she would be able to provide for
J.M. at her mother’s residence and that she had been “doing things” to meet DFPS’s
requirements, but that her grandmother’s recent death had taken a toll on her. She
stated that she was trying to get back on her feet and she “just need[ed] more time.” 
Cervantes said that she would not use narcotics again and that she wants her children
returned to her. After the trial court reset the case for three weeks, to allow for a
home study on the father’s family, Cervantes further testified that, since the case had
been reset, she had been accepted into the “DAPA” drug rehabilitation program and
had started classes in the program the day prior to the hearing. She also explained
that, during the same time, she had missed two scheduled visits with J.M. due to an
illness. 
          Lisa Kay Mendez, a caseworker for DFPS, testified that Cervantes had not
followed through with the family services plan provided by DFPS except for an initial
psychological evaluation. Mendez explained that the evaluator had recommended
individual counseling, parenting classes, and random urine analysis. DFPS referred
Cervantes to counseling, and the counselor contacted Cervantes for two
appointments, but Cervantes failed to show up to either session. Cervantes also did
not follow through with the parenting classes or random urine analysis that were to
be a part of her out-patient services. Mendez testified that the only financial
assistance or support that Cervantes had provided to J.M. since his being in the care
of DFPS were Christmas presents at a recent visit. She also noted that Cervantes had
missed three of seven scheduled visitations with J.M. despite those visits being
regularly scheduled on Cervantes’s days off. 
          Mendez further testified that J.M. is currently in a foster home with his
siblings, N.C. and B.C., and that they seem to be bonding in that foster home. She
stated that J.M. is an adoptable child and that the home where he had been placed is
interested in adopting him. Mendez also explained that J.M. is being seen at a
pediatric clinic because of his pre-birth narcotics exposure and that he has an
undescended testicle that would require an operation. 
          Mendez stated that CPS was not willing to give Cervantes more time to
participate in drug rehabilitation because Cervantes was fully aware of what was
expected from her and had been given enough time to complete services, and yet she
only completed a psychological evaluation. Mendez stated that she believed it would
be in J.M.’s best interest for Cervantes’s parental rights to be terminated.
          On February 8, 2005, at the conclusion of the bench trial, the trial court found
“by clear and convincing evidence that the mother’s rights are terminated as per
161.001(1)(E) and in the best interest of the child.”


 On March 1, 2005, the trial court
entered a decree terminating the parental rights of Cervantes, as well as those of the
father, Jose Antonio Moncivais, and appointing DFPS as the child’s sole managing
conservator because Cervantes:
Engaged in conduct or knowingly placed the child with persons who
engaged in conduct which endangers the physical or emotional well-being of the child, pursuant to § 161.001 (1)(E) of the Texas Family
Code.



 
Standard of Review 
           A parent’s right to “the companionship, care, custody, and management” of her
children is a constitutional interest “far more precious than any property right.” 
Santosky v. Kramer, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 1397 (1982). The
United States Supreme Court has emphasized that “the interest of parents in the care,
custody, and control of their children—is perhaps the oldest of the fundamental
liberty interests recognized by this Court.” Troxel v. Granville, 530 U.S. 57, 65, 120
S. Ct. 2054, 2060 (2000). Likewise, the Texas Supreme Court has also concluded
that “this natural parental right” is “essential,” “a basic civil right of man,” and “far
more precious than property rights.” Holick v. Smith, 685 S.W.2d 18, 20 (Tex. 1985). 
Consequently, termination proceedings must be strictly scrutinized, and “involuntary
termination statutes are strictly construed in favor of the parent.” Id. 
          Because termination “is complete, final, irrevocable, and divests for all time
that natural right . . . the evidence in support of termination must be clear and
convincing before a court may involuntarily terminate a parent’s rights.” Id. (citing
Santosky, 455 U.S. at 747, 102 S. Ct. at 1391; Richardson v. Green, 677 S.W.2d 497,
500 (Tex. 1984)). Clear and convincing evidence is “the measure or degree of proof
that will produce in the mind of the trier of fact a firm belief or conviction as to the
truth of the allegations sought to be established.” Tex. Fam. Code Ann. § 101.007
(Vernon 2002); In re J.F.C., 96 S.W.3d 256, 264 (Tex. 2002). Because termination
findings must be based upon clear and convincing evidence, not simply a
preponderance of the evidence, the Texas Supreme Court has held that the traditional
legal and factual standards of review are inadequate. In re J.F.C., 96 S.W.3d at
264–66. Instead, in conducting a legal sufficiency review in a
termination-of-parental-rights case, we must determine whether the evidence, viewed
in the light most favorable to the finding, is such that the fact finder could reasonably
have formed a firm belief or conviction about the truth of the matter on which the
State bore the burden of proof. See id. at 266. In viewing the evidence in the light
most favorable to the judgment, we “must assume that the fact finder resolved
disputed facts in favor of its finding if a reasonable fact finder could [have done] so,”
and we “should disregard all evidence that a reasonable fact finder could have
disbelieved or found to have been incredible.” In re J.P.B., 180 S.W.3d 570, 573
(Tex. 2005) (citing In re J.F.C., 96 S.W.3d at 266). In conducting a factual
sufficiency review in a termination-of-parental-rights case, we must determine
whether, considering the entire record, including both evidence supporting and
evidence contradicting the finding, a fact finder reasonably could have formed a firm
conviction or belief about the truth of the matter on which the State bore burden of
proof. Id.; In re C.H., 89 S.W.3d 17, 25 (Tex. 2002). We should consider whether
the disputed evidence is such that a reasonable fact finder could not have resolved the
disputed evidence in favor of its finding. In re J.F.C., 96 S.W.3d at 266–67. “If, in
light of the entire record, the disputed evidence that a reasonable fact finder could not
have credited in favor of the finding is so significant that a factfinder could not
reasonably have formed a firm belief or conviction, then the evidence is factually
insufficient.” Id. at 266.Grounds for Termination
          In proceedings to terminate the parent-child relationship brought under section
161.001 of the Texas Family Code, DFPS must establish, by clear and convincing
evidence, one or more of the acts or omissions enumerated under subsection (1) of
section 161.001 and that termination is in the best interest of the child. Tex. Fam.
Code Ann. § 161.001 (Vernon Supp. 2005). Both elements must be established, and
termination may not be based solely on the best interest of the child as determined by
the trier of fact. Tex. Dep’t of Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex.
1987). Here, the trial court, in ordering the termination of Cervantes’s parental rights
as to J.M., expressly found that Cervantes “engaged in conduct or knowingly placed
[J.M.] with persons who engaged in conduct which endanger[ed] the physical or
emotional well-being of [J.M.]” Tex. Fam. Code Ann. § 161.001(1)(E) (Vernon
Supp. 2005).
          DFPS contends, however, that this court “must affirm the trial court’s judgment
with respect to any ground for termination supported by the record which [Cervantes]
failed to challenge in the appeal.” DFPS asserts that the trial court could have made
an implied finding that Cervantes “knowingly placed or knowingly allowed the child
to remain in conditions or surroundings which endangered the physical or emotional
well-being of the child.” See Tex. Fam. Code Ann. § 161.001(1)(D) (Vernon Supp.
2005). DFPS argues that Cervantes’s “failure to challenge the trial court’s implied
finding under (D) obviates the necessity of considering her challenge to the court’s
. . . finding under subsection (E).” 
          In support of its argument, DFPS relies on Thompson v. Texas Department of
Family and Protective Services, 176 S.W.3d 121 (Tex. App.—Houston [1st Dist.]
2004, pet. denied). In Thompson, we rejected a father’s argument that “the trial
court’s only basis for termination was under Family Code section 161.001(1)(O)



because this was the only ground for termination recited in the judgment.” Id. at 125. 
Citing Texas Rule of Civil Procedure 299a,


 DFPS also asserts that findings of fact
may not be recited in a judgment. DFPS reasons that because the trial court’s finding
that Cervantes “engaged in conduct or knowingly placed [J.M.] with persons who
engaged in conduct which endanger[ed] the physical or emotional well-being of
[J.M.]” is recited in the decree, the trial court did not make any formal findings that
this Court must treat as the sole basis for the trial court’s judgment. See id.
          Essentially, DFPS is asserting that in every parental termination case,
regardless of any express ground relied upon by the trial court in a termination order,
a reviewing court may consider the sufficiency of the evidence to support termination
of parental rights under any of the nineteen other grounds specified in section
161.001(1) and affirm the termination of parental rights if the parent fails to challenge
on appeal grounds not found in the termination order but supported by the evidence. 
Specifically, DFPS asks this Court to affirm the trial court’s termination of
Cervantes’s parental rights on the ground that, in violation of section 161.001(1)(D),
Cervantes knowingly placed or knowingly allowed J.M. to remain in conditions or
surroundings which endangered the physical or emotional well-being of J.M., even
though the trial court did not make any such express finding in its decree. See Tex.
Fam. Code Ann. § 161.001(1)(D).
          Section 161.001 provides, in pertinent part:
The court may order termination of the parent-child relationship if the
court finds by clear and convincing evidence:
 
(1)     that the parent has:
 
. . . . 
 
          (D)    knowingly placed or knowingly allowed the child to
remain in conditions or surroundings which endanger the 
physical or emotional well-being of the child;
 
          (E)     engaged in conduct or knowingly placed the child with
persons who engaged in conduct which endangers the
physical or emotional well-being of the child;
 
. . . . 
 
Tex. Fam. Code Ann. § 161.001(1)(D), (E) (emphasis added). Thus, as noted by
DFPS, the trial court could have properly terminated Cervantes’s parental rights upon
a finding, supported by sufficient evidence, that, in violation of subsection (1)(D),
Cervantes knowingly placed or knowingly allowed J.M. to remain in conditions or
surroundings which endangered the physical or emotional well-being of J.M.
          However, consistent with our previous holding in Vasquez v. Texas
Department of Protective & Regulatory Services, 190 S.W.3d 189, 194 (Tex.
App.—Houston [1st Dist.] 2005, pet. denied), we reject DFPS’s argument that we
may affirm the trial court’s decree on the basis of a subsection of section 161.001,
which, although pleaded by DFPS in its original petition, was not expressly found to
have been violated in the decree. As we noted in Vasquez, DFPS “appears to confuse
the general rule in civil cases that findings should not be made in the judgment with
the requirement that the findings in section 161.001 of the Texas Family Code be
made in a parental-rights-termination order.” Id. Under the Family Code, a trial court
“shall render an order” terminating a parent-child relationship only “[i]f the court
finds by clear and convincing evidence grounds for termination of the parent-child
relationship.” Tex. Fam. Code Ann. § 161.206(a) (Vernon Supp. 2005). As we held
in Vasquez, “a parental rights termination order can be upheld only on grounds both
pleaded by [DFPS] and found by the trial court.” 190 S.W.3d at 194. (stating, “we
decline [DFPS’s] invitation to uphold the trial court’s termination order on a ground
different from that stated in the order.”).
          The San Antonio Court of Appeals has described the type of findings of fact
that, pursuant to Rule 299a, are to be separately filed and may not be recited in a
parental termination order. In re A.I.G., 135 S.W.3d 687, 693–94 (Tex. App.—San
Antonio 2003, no pet.). In A.I.G., the trial court stated in its termination order that
it found clear and convincing evidence that the mother engaged in conduct or
knowingly placed her children with persons who engaged in conduct which
endangered their physical or emotional well-being. Id. The mother argued that her
appeal of the termination order should be abated because the order “did not contain
specific positive findings” and because “the court’s failure to identify the conduct
upon which it relied in terminating her parental rights prevent[ed] her from knowing
the exact grounds on which the trial court based its order.” Id. The court stated,
based on Rule 299a, that “[i]t would have been improper for the trial court to describe
the facts supporting its judgment in the body of the judgment itself.” Id. at 694
(emphasis added). However, the court noted that the trial court’s judgment
terminating the mother’s parental rights tracked the language of section 161.001 by
including a finding under the endangerment subsection and a finding of best interests. 
Id. The court concluded, “[t]his is all the Family Code requires the State to prove,
and all the trial court is required to find.” Id. 
          The trial court’s “findings” in the termination order in this case, which are
expressly required by section 161.206 of the Family Code, and which track the
language of section 161.001(1)(E) of the Family Code, are not “findings of fact”
prohibited by Rule 299a. The “findings” simply articulate the trial court’s grounds
for terminating parental rights. Accordingly, we overrule this Court’s previous
holding in Thompson that such findings made in a judgment, which are required by
statute, cannot form the basis of an appeal, and we hold, following Vazquez, that we
review the sufficiency of the evidence presented under the specific statutory grounds
found by the trial court in its termination order. See Vazquez, 190 S.W.3d at 194.



Sufficiency of the Evidence
          In her first and second issues, Cervantes contends that the evidence is legally
and factually insufficient to support the trial court’s findings that she “engaged in
conduct or knowingly placed [J.M.] with persons who engaged in conduct which
endanger[ed] the physical or emotional well-being of [J.M.]” and that termination of
her parental relationship as to J.M. was in J.M.’s best interest. Cervantes argues that
the evidence is legally and factually insufficient to support the trial court’s findings
because no “medical evidence was introduced to prove that [J.M.] had been exposed
to drugs pre-birth or that he had been placed in danger.” Cervantes also asserts that
“[t]here was no medical evidence offered to prove that [Cervantes] had drugs in her
system at the time she gave birth to [J.M.]”
Endangerment
          Under section 161.001(1)(E) of the Family Code, a court may terminate the
parent-child relationship if the court finds by clear and convincing evidence that the
parent has engaged in conduct or knowingly placed the child with persons who
engaged in conduct that endangers the physical or emotional well-being of the child. 
Tex. Fam. Code Ann. § 161.001(1)(E). “Endanger” means to expose to loss or
injury or to jeopardize. Boyd, 727 S.W.2d at 533. Although such endangerment
requires more than a threat of metaphysical injury or the possible ill effects of a
less-than-ideal family environment, it is not necessary that the conduct be directed at
the child or that the child actually suffer injury. In re J.T.G., 121 S.W.3d 117, 125
(Tex. App.—Fort Worth 2003, no pet.). The specific danger to the child’s well-being
may be inferred from parental misconduct standing alone. Boyd, 727 S.W.2d at 533;
In re R.W., 129 S.W.3d 732, 738 (Tex. App.—Fort Worth 2004, pet. denied). To
determine whether termination is necessary, courts may look to parental conduct
occurring both before and after the child’s birth. In re D.M., 58 S.W.3d 801, 812
(Tex. App.—Fort Worth 2001, no pet.). Also, the manner in which a parent treats
other children in the family can be considered in deciding whether that parent
engaged in a course of conduct that endangered the physical or emotional well-being
of a child. In re D.L.N., 958 S.W.2d 934, 939 (Tex. App.—Waco 1997, pet. denied).
          A mother’s use of narcotics during pregnancy may constitute conduct that
endangers the physical and emotional well-being of a child. In re W.A.B., 979 S.W.2d
804, 807 (Tex. App.—Houston [14th Dist.] 1998, pet. denied); see In re U.P., 105
S.W.3d 222, 234 (Tex. App.—Houston [14th Dist.] 2003, pet. denied); Dupree v. Tex.
Dep’t Protective and Regulatory Servs., 907 S.W.2d 81, 84 (Tex. App.—Dallas 1995,
no writ). Here, Cervantes admitted that she used cocaine near the end of her
pregnancy with J.M. even though she knew it could be dangerous to the unborn child. 
Moreover, Mendez testified that, immediately after J.M.’s birth, the child was placed
in a neonatal intensive care unit, suffering withdrawal symptoms from exposure to
cocaine. Although Cervantes complains that “no other medical evidence was
introduced to prove that [J.M.] had been exposed to drugs pre-birth,” we note that she
admitted that she had used cocaine during the ninth month of her pregnancy with J.M.
and that she had a serious recurring problem with narcotics. Testimony regarding
Cervantes’s narcotics use during pregnancy, and the distress suffered by the child
after delivery, demonstrate that Cervantes harmed the physical well-being of the
child. Thus, Cervantes’s ingestion of cocaine while pregnant with J.M. did more than
expose the child to injury—it brought about actual physical harm to the child.
          Moreover, Cervantes’s ingestion of cocaine before the birth of J.M. was not an
isolated event, but was part of a course of conduct of the use of narcotics during four
pregnancies. See In re R.W., 129 S.W.3d at 739 (stating that court may consider
narcotics use and its effect on parent’s life and ability to parent as contributing to
endangering course of conduct); Dupree, 907 S.W.2d at 84. Cervantes also testified
that she used marijuana during her most recent pregnancy. Thus, her narcotics use
continued after J.M. was removed from her care, in the face of periodic narcotics tests
that placed her relationship with her child in jeopardy. See In re J.N.R., 982 S.W.2d
137, 142 (Tex. App.—Houston [1st Dist.] 1998, no pet.) (considering conduct
jeopardizing parental rights as part of course of conduct endangering well-being of
child). DFPS, as part of her service plan, required Cervantes to submit to random
urine analysis; however, Mendez testified that Cervantes had yet to be tested for
narcotics since J.M.’s birth. The use of narcotics and its effect on a parent’s life and
her ability to parent may establish an endangering course of conduct. Dupree, 907
S.W.2d at 84. Despite Cervantes’s contention that she had stopped using cocaine and
marijuana, the trial court was not required to ignore her history of narcotics use
merely because Cervantes testified that it had abated before trial. See In re R.W., 129
S.W.3d at 741.
          The fact that Cervantes ingested cocaine while pregnant with J.M. and the
effect of Cervantes’s use of narcotics on J.M. are not disputed. From this evidence,
a fact finder could reasonably have formed a firm conviction or belief that Cervantes
engaged in conduct which endangered the physical and emotional well-being of J.M. 
Accordingly, we hold that the evidence is legally sufficient to support the trial court’s
finding under section 161.001(1)(E) that Cervantes engaged in conduct that
endangered the physical and emotional well-being of J.M. Moreover, considering
both evidence supporting and contradicting the finding that Cervantes engaged in
conduct which endangered the physical or emotional well-being of J.M., a fact finder
reasonably could have formed such a firm conviction or belief. The fact that DFPS
did not offer medical evidence to prove that Cervantes had cocaine in her system at
the time she gave birth to J.M., or that J.M. had been exposed to cocaine before his
birth, does not render the evidence supporting a finding that Cervantes engaged in
conduct which endangered the physical or emotional well-being of J.M. factually
insufficient. Accordingly, we hold that the evidence is factually sufficient to support
the trial court’s finding under section 161.001(1)(E).
Best Interest of the Child
          In determining whether termination is in the child’s best interest, we may
consider several factors, including, but not limited to, (1) the child’s desires, (2) the
current and future physical and emotional needs of the child, (3) the current and
future physical danger to the child, (4) the parental abilities of the person seeking
custody, (5) whether programs are available to assist the person seeking custody in
promoting the best interests of the child, (6) plans for the child by the person seeking
custody, (7) the stability of the home, (8) acts or omissions of the parent that may
indicate that the parent-child relationship is not proper, and (9) any excuse for acts
or omissions of the parent. Holley v. Adams, 544 S.W.2d 367, 371–72 (Tex. 1976);
In re L.M., 104 S.W.3d 642, 647 (Tex. App.—Houston [1st Dist.] 2003, no pet.). The
burden is on DFPS to rebut the presumption that the best interest of the child is
served by keeping custody in the natural parents. In re K.C.M., 4 S.W.3d 392, 395
(Tex. App.—Houston [1st Dist.] 1999, pet. denied). The Holley factors are not
exhaustive, nor must all of the factors be proved as a condition precedent to terminate
parental rights. See In re C.H., 89 S.W.3d at 27. “The absence of evidence about
some of these considerations would not preclude a fact finder from reasonably
forming a strong conviction or belief that termination is in the child’s best interest,
particularly if the evidence were undisputed that the parental relationship endangered
the safety of the child.” Id.
          Cervantes’s use of narcotics, both during and after J.M.’s birth, endangered the
welfare of J.M. and is relevant to the issue of best interest. Cervantes had a history
of narcotics use that had already injured J.M. and would likely endanger the child in
the future. Although Cervantes admitted to using cocaine while pregnant with J.M.,
knowing this was harmful to J.M., she then used marijuana, while pregnant with
another child and after J.M. was placed in the care of DFPS, knowing this was
inconsistent with efforts for her reunification with the child. Given Cervantes’s long
standing history of narcotics use during her pregnancies, and her failure to stay off
narcotics despite her enrollment in two prior drug rehabilitation programs, a
reasonable trier of fact could have determined that Cervantes would continue to
endanger J.M.
          Moreover, we note that Mendez testified that DFPS had placed J.M. in a home
in which the foster parents are interested in adopting him. Mendez also indicated that
J.M. is living with his other siblings and that they appear to be bonding. In
comparison, Cervantes did not indicate that she could provide a stable or permanent
home for J.M. At the time of trial, Cervantes’s most recent relationship was with Jose
Moncivais, the father of J.M., who also admitted at trial to being a current narcotics
user. Specifically, at the trial resetting in February, when the court asked if he would
test positive for narcotics use if he took a urine analysis that day, Moncivais admitted
that he had smoked marijuana that very day. 
          Here, the critical factor in determining whether the termination of Cervantes’s
parental rights was in J.M.’s best interest is the fact that Cervantes used narcotics
during her pregnancy and actually exposed J.M. to physical danger, and her continued
use of narcotics would likely expose him to physical and emotional danger in the
future. From these facts alone, a fact finder could have formed a firm conviction or
belief that termination of Cervantes’s parental rights was in J.M’s best interest. 
Moreover, considering both evidence in support of the finding and contrary to the
finding, a fact finder could have reasonably formed such a firm conviction or belief. 
Although Cervantes testified that she had successfully completed a drug rehabilitation
program before the birth of J.M., she in fact used cocaine while pregnant with him
and used marijuana two months prior to trial and while pregnant with another child. 
Also, although Cervantes testified that she would be able to provide for J.M. while
living with her mother, and that she was “in school,” the evidence shows that she did
not follow through with a DFPS family services plan, failed to show up for
counseling appointments, and did not follow through with parenting classes or
random urine analysis testing. Moreover, the only financial assistance or support that
she gave to J.M. consisted of some Christmas presents. Accordingly, we hold that the
evidence is legally and factually sufficient to support the trial court’s finding that
termination of Cervantes’s parental rights as to J.M. was in J.M.’s best interest. 
          We overrule Cervantes’s first and second issues.
Due Process
          In her third issue, Cervantes contends that her “right of due process pursuant
to the Fourteenth Amendment . . . was violated when the trial court ordered her
parental rights terminated.”
          However, Cervantes has not separately argued how her right to due process of
law was violated as a result of the trial court’s termination of her parental rights. 
Because there is no discussion of this issue in the body of Cervantes’s brief and no
citation to supporting authority, we hold that Cervantes has presented nothing for our
review. See Richard v. Cornerstone Constructors, Inc., 921 S.W.2d 465, 469 (Tex.
App.—Houston [1st Dist.] 1996, writ denied).
          We overrule Cervantes’s third issue.
DFPS Conservatorship
          In her fourth issue, Cervantes argues that “[i]n light of the fact that the
evidence is insufficient to support the court’s decision to terminate [Cervantes’s]
parental rights, it follows that it was not in [J.M.’s] best interest that [DFPS] be
granted sole managing conservatorship of [J.M.].” Having held that there is sufficient
evidence to support the trial court’s finding that the termination of Cervantes’s
parental rights was in J.M.’s best interest, we overrule Cervantes’s fourth issue. Conclusion
          We affirm the decree of the trial court. 
 


 
     Terry Jennings
     Justice


En Banc court consists of Chief Justice Radack and Justices Taft, Nuchia, Jennings,
Keyes, Alcala, Hanks, Higley, and Bland.