**Opinion filed March 19, 2009**



In The

# Eleventh Court of Appeals

_____

## No. 11-08-00080-CV

_____

## IN THE INTEREST OF P.N.M. AND R.T.M., CHILDREN

**On Appeal from the 90th District Court**

**Stephens County, Texas**

**Trial Court Cause No. 29,237**

## M E M O R A N D U M   O P I N I O N

This is an involuntary termination action. The Department of Family and Protective Services (the Department) filed suit to terminate the parent-child relationship between Jamie Lynn Hudgins and her children, P.N.M., R.T.M., and Z.F. Z.F. was placed with his paternal grandmother and is not part of this appeal. The trial court conducted a bench trial and then terminated the parent-child relationship between Hudgins and P.N.M. and R.T.M. We affirm.

*Background Facts*

The Department received a referral when Hudgins's youngest child, two-year-old Z.F., was seen wandering in the streets without any clothes on. This was not the first time that the Department had received a call concerning possible neglect of or injury to Hudgins's children, and it had previously offered her family-based services. This time, Hudgins's children were removed. The trial

court named the Department temporary managing conservator of the three children and ordered Hudgins to take specified actions to obtain their return, such as attend a psychological evaluation, counseling, and parenting classes. The Department prepared a family service plan. That plan included the court-ordered actions, but it also required Hudgins to maintain employment, to obtain safe housing, and to notify the Department within five days of any change of address.

Hudgins was living with her boyfriend at her mother's house in Breckenridge. She attended a few parenting classes. However, in November 2006, she left town without telling the Department where she was going. Hudgins contacted the Department in May. She told the Department that she had been abused by her boyfriend and was in a shelter in Mineral Wells. She also asked to restart her services. Because she had moved, it was necessary to obtain a new caseworker, and the Department began the process of reassigning her case and resuming her services. However, before that was completed, Hudgins was arrested. Hudgins had been previously placed on three-year deferred adjudication for forgery. She tested positive in December 2006 for amphetamines and cannabinoids, and she failed to comply with several terms and conditions of her community supervision. Hudgins's community supervision was revoked, and she was sentenced to fifteen months confinement. She was still incarcerated at the time of trial.

*Issues*

Hudgins contends that the evidence is legally or factually insufficient to establish any of the basis upon which the trial court relied to justify termination and that it is legally or factually insufficient to establish that termination is in the children's best interest.

*Standard of Review*

Texas courts have long recognized that the natural right existing between a parent and child is of "constitutional dimensions." *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976). There is a strong presumption that the best interest of a child is served by keeping the child with the natural parent. *In re G.M.*, 596 S.W.2d 846 (Tex. 1980). Thus, involuntary termination proceedings and statutes are strictly scrutinized in favor of the parent. *Holick v. Smith*, 685 S.W.2d 18, 20-21 (Tex. 1985).

Due process requires that the grounds for termination be established by clear and convincing evidence. This requires the measure or degree of proof that will produce in the mind of the trier of

2

fact a firm belief or conviction as to the truth of the allegations sought to be established. TEX. FAM. CODE ANN. § 101.007 (Vernon 2008); *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 31 (Tex. 1994).

When conducting a legal sufficiency review, we review the entire record in the light most favorable to the finding and determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We must assume that the trial court resolved disputed facts in favor of its finding. *Phillips v. Tex. Dep't of Protective & Regulatory Servs.*, 149 S.W.3d 814, 817 (Tex. App.—Eastland 2004, no pet.). We must also disregard all evidence that a reasonable factfinder could have disbelieved or found incredible, but we cannot disregard undisputed facts. *In re J.F.C.*, 96 S.W.3d at 266.

When conducting a factual sufficiency review, we give due consideration to the evidence the trial court could reasonably have found to be true. *In re J.F.C.*, 96 S.W.3d at 266. We must determine whether the evidence is such that the trial court could reasonably have formed a firm belief or conviction regarding the allegations. *Id.* We must also consider whether the disputed evidence is such that a reasonable factfinder could not have resolved the disputed evidence in favor of its finding. *Id.* While we do not view the evidence in the light most favorable to the challenged finding, our review must maintain the respective roles of trial courts and appellate courts. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002). If, in light of the entire record, the disputed evidence establishes that a reasonable factfinder could not have formed a firm belief or conviction in favor of the finding, then the evidence is factually insufficient. *In re J.F.C.*, 96 S.W.3d at 266.

*Grounds For Termination*

The trial court found that Hudgins:

* knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger the physical or emotional well-being of the children;

* engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the physical or emotional well-being of the children;

* constructively abandoned the children who have been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services or an authorized agency for not less than six months and: (1) the Department or authorized agency has

3

made reasonable efforts to return the children to the mother; (2) the mother has not regularly visited or maintained significant contact with the children; and (3) the mother has demonstrated an inability to provide the children with a safe environment;

* failed to comply with the provisions of a court order that specifically established the actions necessary for the mother to obtain the return of the children who have been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the children's removal from the parent under Chapter 262 for the abuse or neglect of the children.

Hudgins challenges the legal and factual sufficiency of the evidence supporting each of these findings. We turn first to the trial court's final ground – the failure to comply with the provisions of a court order establishing the actions necessary for the return of the children.

After the children were removed, the trial court held an adversary hearing and entered a temporary order. The court found that there was sufficient cause to justify removing the children, appointed the Department temporary managing conservator, and ordered Hudgins to take the following actions to obtain her children's return:

1. attend a psychological or psychiatric evaluation;

2. attend counseling;

3. attend parenting classes;

4. participate in drug and alcohol assessment and testing; and

5. comply with the Department's Service Plan.

The Department prepared a service plan. In addition to the court-ordered actions, the plan also required Hudgins to maintain employment and housing and to provide the Department with current addresses and phone numbers.

Hudgins did not attend a psychological or psychiatric evaluation and denied that one was scheduled. She did not participate in counseling or have a drug and alcohol assessment done. She attended a few parenting classes but did not complete them because she moved without telling the Department where she was going. In May, when she contacted the Department, a new caseworker was appointed; however, Hudgins was arrested before she could participate in any services. Hudgins

acknowledged that she was required to work toward getting her own home but admitted that she had been unable to do so. Instead, she had lived with family and friends during the entire pendency of this case. She also acknowledged her obligation to live drug-free and crime-free and admitted that she had failed to do this as well. Hudgins agreed that she had basically not done anything the service plan required her to do.

Hudgins acknowledges that the burden of complying with a court order is on her, even if she is incarcerated. *See Thompson v. Tex. Dep't of Family & Protective Servs.*, 176 S.W.3d 121, 127 (Tex. App.—Houston [1st Dist.] 2004, pet. denied). She concedes that she did not complete all required activities but contends that she was not given a chance to do so. While Hudgins is critical of the Department, the fact remains that her failure to comply is principally due to her disappearance for several months and her arrest and incarceration. The evidence is both legally and factually sufficient to establish that she did not comply with the court order and, therefore, termination was appropriate pursuant to TEX. FAM. CODE ANN. § 161.001(O) (Vernon 2008). Hudgins's third issue is overruled. Because of this holding, it is unnecessary to address either her first or second issues. TEX. R. APP. P. 47.1.

*Best Interest of the Children*

A statutory act of omission or commission must be coupled with a finding that termination of the parent-child relationship is in the best interest of the children. *In re A.D. & V.G.D.*, 203 S.W.3d 407, 412-13 (Tex. App.—El Paso 2006, no pet.). When reviewing the sufficiency of the best-interest evidence, we apply the nonexclusive factors found in *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). These factors include (1) the desires of the children; (2) the emotional and physical needs of the children now and in the future; (3) the emotional and physical danger to the children now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the plans for the children by these individuals; (6) the stability of the home; (7) the acts or omissions of the parent that may indicate that the existing parent-children relationship is not a proper one; and (8) any excuse for the acts or omissions of the parent. *Id*. The Department is not required to prove all eight of these factors. *In re C.H.*, 89 S.W.3d at 27. In an appropriate case, undisputed evidence of just one factor may be sufficient. *Id.*

Hudgins has a history of drugs and criminal misconduct. A parent's drug addiction poses an emotional and physical danger to their children. *In re C.A.J.*, 122 S.W.3d 888, 893 (Tex. App.—Fort Worth 2003, no pet.). A parent's inability to avoid arrest or incarceration is also relevant to a best-interest determination. *In re D.M., B.W., & J.C.W.*, 58 S.W.3d 801, 814 (Tex. App.—Fort Worth 2001, no pet.). Hudgins failed to participate in the court-ordered drug and alcohol assessment and testing, and she later tested positive for drugs on a test administered as part of her community supervision. She testified that she was clean now but admitted that she had been using drugs. When the police arrived at the house in response to her two-year-old being found wandering in the street naked, she hid because she had an active warrant for her arrest. She was incarcerated during much of this case because of the failed drug test and her inability to comply with the terms and conditions of her community supervision.

Hudgins had been the subject of several prior CPS referrals. These involved various allegations of neglect and abuse. Hudgins disappeared for several months and had no contact with the children. Even her mother did not know where she was. A CASA volunteer noted that the children did not seem upset when their mother failed to appear for visitation. Hudgins never obtained a place of her own to live. Even though required to maintain employment, she worked only four months at a Sonic restaurant. Hudgins failed to comply with the terms of the trial court's temporary order, the Department's family service plan, and the terms and conditions of her community supervision. The trial court could reasonably conclude that Hudgins's past misconduct would continue in the future and could also consider her apparent lack of interest in her children and their lack of attachment to her.

The trial court could also consider the children's need for a safe and stable home environment. P.N.M. was nine years old, and R.T.M. was seven years old at the time of trial. When the Department removed them from Hudgins, they had been living with her and her abusive boyfriend at Hudgins's mother's house. The police had been required to come to the house on several occasions, usually because of a lack of supervision over the children. The Department had given Hudgins a safety device to keep the doors locked, but the day Z.F. was found walking down the street, it was not being used.

6

The Department placed P.N.M. and R.T.M. with the Children's Methodist Home. There were some adjustment issues, but they appeared to be doing well. Their medical needs were being taken care of, and they saw a counselor on a regular basis. A Department caseworker believed they were adoptable. The trial court could reasonably consider the children's need for stability and Hudgins's inability to provide it and determine that termination of her parental rights was the children's best hope for obtaining a safe and stable home environment.

The evidence is legally and factually sufficient to support the trial court's determination that termination was in the children's best interest. Hudgins's fourth issue is overruled.

*Holding*

The trial court's judgment is affirmed in all respects.


RICK STRANGE

JUSTICE


March 19, 2009

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.

7