NO. 07-12-00003-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

MAY 8, 2012

IN THE INTEREST OF J.R., L.R., B.R., H.R., CHILDREN

FROM THE 108TH DISTRICT COURT OF POTTER COUNTY;

NO. 75,753-E; HONORABLE DOUGLAS WOODBURN, JUDGE

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellants, Johnny and Christina, appeal the trial court's order terminating their parental rights to four of their children, daughters J.R., L.R., B.R., and H.R., currently ages eleven, nine, eight, and six, respectively.[1] On appeal, they contend the evidence is insufficient to support the trial court's order. We will affirm.

---

[1] Throughout this opinion, appellants will be referred to as "Johnny" and "Christina," and the children will be identified by their initials. See TEX. FAM. CODE ANN. § 109.002(d) (West Supp. 2011); TEX. R. APP. P. 9.8(b).

Factual and Procedural History

<u>The Department's First Petition</u>

In October 2007, the Texas Department of Family and Protective Services (the Department) received a report that J.R. and L.R. were being physically abused and neglected, that they were living in a house without electricity and running water, and that J.R. had been sent to school with alcohol in her lunch. When the Department investigated the report, it found the children were very dirty with dark areas of caked-on dirt on their bodies and lice and rodent droppings in their hair. The Department received a second report days later that these issues had not been resolved. In January 2008, the Department began Family Based Safety Services with Johnny and Christina in an effort to assist the family. Approximately two months later, however, the Department learned that J.R. and L.R. still had lice and rodent droppings in their hair. The report also alleged that the two girls had ingested sleeping medication.

In April 2008, the Department removed all four girls from the home and filed its first petition seeking termination of Johnny's and Christina's parental rights to the children. On May 6, 2008, the trial court signed an agreed temporary order in which it ordered Johnny and Christina to comply with the Department's service plan. The Department permitted the children to return to the home in November 2008 but removed them again in April 2009 based on the following reports: continued lice infestations, frequent extended absences from school, not being current on immunizations, lack of medical and dental care, and Johnny's and Christina's failure to complete their service

2

plan. The Department was also concerned about allegations that the girls were being sexually abused by an uncle.

In October 2009, the parties entered into an agreed final order (the 2009 Order) in which the Department was named permanent managing conservator of the four girls and Johnny and Christina were named possessory conservators with rights of visitation and duties to support. The 2009 Order denied all other requested relief, including the Department's request to terminate the parent-child relationship.

The Department's Second Petition

In February 2010, the Department implemented a new service plan for Johnny and Christina. Department records show that, as of June 2010, the Department continued to have concerns regarding safe, stable, non-infested housing for the children. The Department further documented the impaired intellectual functioning of J.R. and L.R. and the special needs of B.R. Continued investigation showed that, as of December 2010, Johnny and Christina resided at the time in a dirty, poorly supplied apartment and still had difficulties meeting their own needs, had only limited contact or cooperation with the Department, had moved at least five times, and had maintained only sporadic, infrequent visits with the girls.

Johnny's and Christina's disinterest in initiating or completing services continued through October 2011, when the Department concluded that the couple had failed to make any changes which would demonstrate their ability to care for the children or meet the children's physical or emotional needs. They failed to inform the Department of their current address, had not requested visitation with the children in several weeks, and

3

denied any deficiencies in their parenting skills. In February 2011, the Department filed its second petition seeking termination of Johnny's and Christina's rights to the four girls. In it, the Department alleged that circumstances had materially and substantially changed since the 2009 Order, that several statutory grounds for termination existed, and that termination was in the children's best interest.

In a trial to the bench, which neither Johnny nor Christina attended, the Department presented evidence in support of its several allegations of grounds for termination and its allegation that termination was in the best interest of the children. The trial court found that clear and convincing evidence supported four statutory grounds for termination and a finding that termination of parental rights was in the best interest of the children. On December 7, 2011, the trial court signed its order terminating Johnny's and Christina's parental rights to J.R., L.R., B.R., and H.R.

Johnny and Christina appeal, contending the evidence is legally and factually insufficient to support (1) a finding that their acts or omissions, primarily those since the 2009 Order, satisfied any of the alleged statutory grounds for termination and (2) a finding that termination of their parental rights was in the children's best interest.

Applicable Law and Standards of Review

The natural right existing between parents and their children is of constitutional dimension. Holick v. Smith, 685 S.W.2d 18, 20 (Tex. 1985); see Santosky v. Kramer, 455 U.S. 745, 758–59, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). A decree terminating this natural right is complete, final, irrevocable, and divests for all time that natural right as well as all legal rights, privileges, duties, and powers between the parent and child

4

except for the child's right to inherit. Holick, 685 S.W.2d at 20. That being so, we are required to strictly scrutinize termination proceedings. In re G.M., 596 S.W.2d 846, 846 (Tex. 1980). However, parental rights are not absolute, and the emotional and physical interests of a child must not be sacrificed merely to preserve those rights. In re C.H., 89 S.W.3d 17, 26 (Tex. 2002).

Because the instant case deals with termination of Johnny's and Christina's parental rights to these children after the trial court disposed of a prior petition seeking the same, this case invokes, and the Department alleged, the requirements of section 161.004, which provides as follows:

(a) The court may terminate the parent-child relationship after rendition of an order that previously denied termination of the parent-child relationship if:

(1) the petition under this section is filed after the date the order denying termination was rendered;

(2) the circumstances of the child, parent, sole managing conservator, possessory conservator, or other party affected by the order denying termination have materially and substantially changed since the date that the order was rendered;

(3) the parent committed an act listed under Section 161.001 before the date the order denying termination was rendered; and

(4) termination is in the best interest of the child.

5

(b) At a hearing under this section, the court may consider evidence presented at a previous hearing in a suit for termination of the parent-child relationship of the parent with respect to the same child.

TEX. FAM. CODE ANN. § 161.004 (West 2009); see In re N.R.T., 338 S.W.3d 667, 678–79 (Tex.App.—Amarillo 2011, no pet.). So, as in any other termination case in which the Department simply alleged section 161.001, the Department, here, is still required to prove that a predicate statutory ground for termination exists and that termination is in the children's best interest. See TEX. FAM. CODE ANN. § 161.004(a)(3)–(4). Section 161.004 adds another requirement, however, in this procedural context: that the circumstances of an involved party have materially and substantially changed since the date the prior order denying termination was rendered. See id. § 161.004(a)(2). Section 161.004(a)(2)'s additional requirement has been regarded as a mechanism through which the Department may, upon proper proof of a material and substantial change in circumstances, defeat a parent's claim of *res judicata* when, as here, the Department seeks termination after a prior petition seeking termination was denied. See In re K.G., 350 S.W.3d 338, 349 (Tex.App.—Fort Worth 2011, pet. denied); see also In re N.R.T., 338 S.W.3d at 680 (concluding that, when Department satisfied section 161.004(a)'s requirements, under section 161.004(b), "trial court was free to consider evidence predating" prior order denying termination). There are no definite guidelines as to what constitutes a material and substantial change in circumstances under section 161.004. In re N.R.T., 338 S.W.3d at 679. Instead, we determine whether there has been such a change based on the facts of each case. Id.

6

With respect to section 161.004's other requirements, we reiterate that a trial court may order termination of parental rights if the petitioner establishes (1) one or more acts or omissions enumerated under section 161.001 and (2) that termination of the parent-child relationship is in the best interest of the child. TEX. FAM. CODE ANN. § 161.004(a) (3)–(4). Though evidence may be relevant to both elements, each element must be proven, and proof of one does not relieve the burden of proving the other. See In re C.H., 89 S.W.3d at 28. While both a statutory ground and best interest of the child must be proven, only one statutory ground is required to terminate parental rights under section 161.001. In re A.V., 113 S.W.3d 355, 362 (Tex. 2003). Therefore, we will affirm the trial court's order of termination if legally and factually sufficient evidence supports any one of the grounds found in the termination order, provided the record shows that it was also in the best interest of the child for the parent's rights to be terminated. See id.

Due process requires the application of the clear and convincing standard of proof in cases involving involuntary termination of parental rights. In re J.F.C., 96 S.W.3d 256, 263 (Tex. 2002); see TEX. FAM. CODE ANN. § 161.206(a) (West 2009). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2009). This standard, which focuses on whether a reasonable jury could form a firm belief or conviction, retains the deference a reviewing court must have for the factfinder's role. In re C.H., 89 S.W.3d at 26.

In reviewing the legal sufficiency of the evidence supporting an order terminating parental rights, we look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction as to the truth of the allegations sought to be established. See In re J.F.C., 96 S.W.3d at 266. "To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." Id. In other words, we will disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. Id.

When reviewing the factual sufficiency of the evidence supporting a termination order, we determine "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the [Department]'s allegations." In re C.H., 89 S.W.3d at 25. In conducting this review, we consider whether the disputed evidence is such that a reasonable factfinder could not have resolved the disputed evidence in favor of its finding. In re J.F.C., 96 S.W.3d at 266. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." Id.

Analysis

Material and Substantial Change

Again, the 2009 Order appointed the Department permanent managing conservator of the four girls and named Johnny and Christina possessory conservators with rights of visitation and duties to support. The trial court denied all other relief sought, including termination of the couple's parental rights to their four daughters.

Since the trial court rendered the 2009 Order, however, the circumstances of the children, the parents, and the Department have changed. With respect to the children, J.R.'s and L.R.'s counselor, Lee Ann Lefevre, testified that they initially held out hope that their parents would take the steps necessary to secure the reunification of the family. She indicated that this hope persisted for some time, especially with respect to J.R. However, both girls now want their parents' rights to be terminated so that they can be adopted into permanent families. See Thompson v. Tex. Dep't of Family & Protective Servs., 176 S.W.3d 121, 126 (Tex.App.—Houston [1st Dist.] 2004, pet. denied) (observing that child's "progress in foster care is also a change in circumstance because it has readied him for a more permanent placement"). The record indicates that B.R. has been placed in a foster home and moved with the foster family to the Dallas area. H.R. is in a home with the girls' younger brother, J.R., with a family who seeks to adopt them both. So, the children are significantly closer, both psychologically and logistically, to places in which they seek adoptive families and stability.

With respect to Johnny and Christina, much in their life has remained the same: unstable. However, their continued instability has manifested itself in new ways, ways

9

that have now impacted their relationships with their children and the Department such that their own circumstances have materially and substantially changed. The Department no longer saw reunification as feasible because Johnny and Christina had failed to complete services since February 2010 and had maintained only sporadic, infrequent visits with the girls. See id. at 127.

Further, the parents had refused to maintain regular contact with the Department and, in the last conversation about two weeks prior to the hearing, had refused to disclose to the Department their current address. Their parental rights to another child, an infant son, J.R., have been terminated since the 2009 Order. Also, Christina has lost her Medicaid benefits, and the Department noted that she had failed to address her own medical problems. Between the two of them, Johnny and Christina made only three child support payments, totaling $225.00, since the 2009 Order.

In December 2010, the Department noted concerns regarding continued frequent, often unreported moves and the fact that Johnny and Christina had lived for some time behind the home of a registered sex offender. The apartment the Department visited around December 2010 was dirty and poorly supplied, as was the one-bedroom apartment visited in June 2011. Neither had given the Department any indication that he or she had attained stable employment. The Department noted that Johnny and Christina continued to "demonstrate significant instability." So, while they had done little to change their lifestyle, their circumstances, in relation to the Department, had changed in that they had ceased even minimal effort to visit or support the children or cooperate with the Department.

10

Based on Johnny's and Christina's continued instability and recent disinclination to cooperate at all with the Department, their daughters, too, had given up any hope of reunification; they wished for permanence and appeared to have accepted that permanence will only come to them by way of adoption. So, Johnny's and Christina's circumstances had materially and substantially changed in that at least two of their children had abandoned hope of reunification. Further, Johnny and Christina are no longer a potential source of permanence and stability. Lefevre's testimony suggested that J.R. and L.R. regard the few remaining ties to their parents as a hindrance to the girls' goal of permanence.

Regarding the Department, it has found a family ready to adopt both H.R. and her younger brother, and seeks an adoptive home for J.R., L.R., and B.R. as a sibling group. See In re N.R.T., 338 S.W.3d at 679. The Department stands in a different position now that Johnny and Christina have continued to refuse to contact the Department and complete services. In light of every indication that they are not going to take any steps to be suitable parents for the girls, as counselor Lefevre explained, it would be "unthinkable" that the girls would be returned to Johnny's and Christina's care and "very, very sad" for the girls to languish in foster care throughout childhood. With that, the Department's goal has shifted toward finding the girls an adoptive family to meet their needs for permanence and stability.

On these facts, the circumstances of the children, the parents, and the Department have materially and substantially changed such that the trial court was permitted to consider endangering conduct and conditions present prior to rendition of

11

the 2009 Order when determining whether Johnny's and Christina's parental rights should be terminated as requested in the Department's second petition.

Predicate Act or Omission

Having concluded that the circumstances since the 2009 Order have materially and substantially changed, we look to evidence that would support a finding that Johnny and Christina knowingly placed or allowed the children to remain in conditions or surroundings which endanger their physical or emotional well-being, without regard to whether the conditions arose before or after rendition of the 2009 Order. See TEX. FAM. CODE ANN. § 161.001(1)(D) (West Supp. 2011).

"Endanger" means "to expose to loss or injury; to jeopardize." Tex. Dep't of Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987). Although "'endanger' means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it is not necessary that the conduct be directed at the child or that the child actually suffers injury." Id.; see In re P.E.W., 105 S.W.3d 771, 777 (Tex.App.—Amarillo 2003, no pet.) (observing that child "need not develop or succumb to a malady" in order to prove endangering conditions). Subsection (D) focuses on the suitability of the children's living conditions. In re R.D., 955 S.W.2d 364, 367–68 (Tex.App.—San Antonio 1997, pet. denied). However, although the focus of subsection (D) is on the children's living environment and not on the parents' conduct, parental conduct may produce an endangering "environment." See In re D.T., 34 S.W.3d 625, 633 (Tex.App.—Fort Worth 2000, pet. denied).

12

The record establishes that the children's living conditions were inadequate and dirty and in disarray. Unsanitary conditions can qualify as surroundings that endanger a child. In re C.L.C., 119 S.W.3d 382, 392 (Tex.App.—Tyler 2003, no pet.); see also In re K.M.B., 91 S.W.3d 18, 24–25 (Tex.App.—Fort Worth 2002, no pet.) (holding evidence that mother exposed children to homes with roaches and lice problems, animal feces, terrible odors, and general filth supported finding that conditions endangered children's physical well-being). The children, too, were dirty, regularly seen wearing dirty clothing and having dark patches of dirt on their bodies. The children were often absent from school, and there is evidence that they had ingested sleeping medication.

Likely as a result of their living conditions and lack of care, the children regularly had rodent droppings in their hair and suffered from chronic lice infestations. Such evidence speaks to an environment in which the children's physical, emotional, hygienic, and medical needs were neglected. See In re P.E.W., 105 S.W.3d at 777 (concluding that child's exposure to continually unsanitary living conditions, his continued uncleanliness, and lack of attention to his medical needs were indicia of an endangering environment). There is also evidence that suggests that, while in the home, the girls were sexually abused by an uncle, most certainly an endangering surrounding. See In re A.B., 125 S.W.3d 769, 775–76 (Tex. App.—Texarkana 2003, pet. denied). The evidence also shows that the parents failed to maintain stable housing or employment over the years. Based on such evidence, the trial court could have concluded that a lifestyle of such uncertainty and instability endangered the children's physical and emotional well-being. See In re S.D., 980 S.W.2d 758, 763

13

(Tex.App.—San Antonio 1998, pet. denied) (in endangering conduct analysis, holding that conduct which subjects child to unstable life endangers the child's well-being).

Based on the foregoing evidence, a reasonable trier of fact could have formed a firm belief or conviction that Johnny and Christina knowingly placed or knowingly allowed the children to remain in conditions that endangered their physical or emotional well-being.  See TEX. FAM. CODE. ANN. § 161.001(1)(D).  We overrule their first issues.

Best Interest of the Children

The Texas Supreme Court has recognized a non-exhaustive list of factors that are pertinent to the inquiry whether termination of parental rights is in the best interest of the child: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent.  Holley v. Adams, 544 S.W.2d 367, 371–72 (Tex. 1976); see also TEX. FAM. CODE ANN. § 263.307 (West 2009) (providing extensive list of factors that may be considered in determining child's best interest).  In examining the best interest of the child, we may consider evidence that was also probative of the predicate act or omission.  See In re C.H., 89 S.W.3d at 28.  The best

14

interest determination may rely on direct or circumstantial evidence, subjective facts, and the totality of the evidence.  In re N.R.T., 338 S.W.3d at 677.

The Department need not prove all nine Holley factors, and the absence of evidence relevant to some of those factors does not bar a finding that termination is in the child's best interest, especially in the face of undisputed evidence that the parental relationship endangered the child.  See C.H., 89 S.W.3d at 27.  No one Holley factor is controlling, and evidence of one factor may be sufficient to support a finding that termination is in the child's best interest.  In re A.P., 184 S.W.3d 410, 414 (Tex.App.—Dallas 2006, no pet.).

For evidence regarding the children's desires, we look to Lefevre's testimony. Based on her observations during two years of counseling J.R. and L.R., Lefevre testified that termination would have "a very positive impact" on J.R. by allowing her to complete the grieving process and move forward.  In the two months preceding trial, J.R. had come to accept that her parents were not going to complete services and secure the return of the children, and she had finally expressed interest in being adopted.  L.R. was further along in this respect; she had no interest in seeing Johnny and Christina again and expressed that it was her "Christmas wish" that their rights be terminated so she could be in a position to find a permanent family.  Lefevre added that termination would make L.R. "extraordinarily happy" and decrease her anxiety related to the lack of permanence.

Lefevre observed that both J.R. and L.R. do still love their parents but explained that both are looking toward permanency in an adoptive family.  While we do not

15

minimize the natural affection the children would have toward their biological parents, we cannot permit that affinity to take priority over the needs of the children:

> Although a child's love of his natural parents is a very important consideration in determining the best interests of the child, it cannot override or outweigh the overwhelming and undisputed evidence showing that the parents placed or allowed the child to remain in conditions, and engaged in conduct or placed the child with persons who engaged in conduct, which endangers the physical and emotional well-being of the child. The child's love of his parents cannot compensate for the lack of an opportunity to grow up in a normal and safe way equipped to live a normal, productive, and satisfying life.

In re W.S.M., 107 S.W.3d 772, 773 (Tex. App.—Texarkana 2003, no pet.).

J.R.'s and L.R.'s expressions of their desire for permanence is relevant to the children's present and future needs as well. As demonstrated by J.R.'s and L.R.'s expressions of their desire for a permanent family, the need for permanence for the child is a compelling consideration in examining the child's present and future physical and emotional needs. In re S.H.A., 728 S.W.2d 73, 92 (Tex.App.—Dallas 1987, writ ref'd n.r.e.) (en banc). Further, there is little doubt that the girls will have ordinary medical needs as they grow, and the record suggests they will have a few special medical and emotional considerations. Lefevre testified to the continued but improved emotional and behavioral struggles that J.R. and L.R. have addressed during their counseling sessions. J.R. and H.R. have low IQs and function below their ages. The record also shows that B.R. was diagnosed with mental deficiencies and that both she and H.R. require speech therapy. Johnny and Christina have shown themselves to be wholly inadequate to deal with any of the girls' present and future needs. Based on the evidence before it, the trial court also could have concluded that a real danger exists

16

that Johnny and Christina would not be able to meet the children's compelling need for permanence or their need for appropriate housing and medical care.  See D.O. v. Tex. Dep't of Human Servs., 851 S.W.2d 351, 358 (Tex.App.—Austin 1993, no writ).

As to present and future danger to the girls, the record shows that Johnny and Christina have a pattern of moving with alarming frequency and have failed to maintain stable employment.  Their pattern of inadequate housing, unemployment, and general instability poses a threat to the physical and emotional well-being of the children.  See In re C.A.J., 122 S.W.3d 888, 894 (Tex.App.—Fort Worth 2003, no pet.).  Further, though not fully developed in the record, there are allegations that the girls were victims of sexual abuse.  The trial court could have concluded, based on the chronically inadequate, unsafe environment in which the girls lived, continued presence in such an environment posed a threat of danger to their well-being.

In a related observation, we add that, after the initial removal, the girls were returned to the home for some time.  They were removed again, however, following reports of truancy and continued lice infestation and rodent droppings in their hair.  The trial court was authorized to consider this evidence of repeated, chronic neglect that was left unaddressed even after the Department intervened.  See TEX. FAM. CODE ANN. § 263.307(b)(4).

In addition to the evidence presented to the trial court that Johnny and Christina had failed to meet the physical and emotional needs of these four daughters, the trial court also considered evidence pertaining to Christina's extensive history with the Department and shockingly inadequate parenting that has spanned decades and

affected a number of children.  As noted, in September 2011, Johnny's and Christina's rights to an infant son, J.R., were terminated.  But it was years earlier, in 1990, that Christina's parenting first came to the Department's attention.  One son, J.P., died of multiple blunt force trauma to the head, and the Department notes that Christina confessed to having dealt the blows.  Another son, C.F., was placed in the permanent managing conservatorship of the Department, and her rights to another son, B.B., were terminated.  There were allegations of physical neglect of yet another son, A.W., who also later died.  So, we have knowledge of at least nine children to whom Christina has given birth.  Of those nine children, two have died under, at least, suspicious circumstances, and her parental rights to the other seven were terminated, or in the case of C.F., restricted.  No evidence indicates that Christina has successfully cared for any one of her many children.  The trial court could have considered her extensive and troubling parental history.  See id.  Johnny, too, has a troubling past.  He has a criminal history of sexual offenses having been committed in Iowa and involving two female victims ages nine and fourteen.  Both Johnny's and Christina's histories in regard to other children are considerations relevant to the best interests of *these* children.  See TEX. FAM. CODE ANN. § 263.307(b)(7); In re C.H., 89 S.W.3d at 28.

Though the Department has made programs available to Johnny and Christina, the record suggests that the two have demonstrated no motivation to complete such services.  Their failure to take advantage of the plans and services offered by the Department in an effort to reunite the family is a relevant consideration in determination of the best interest of the child.  In re M.R., 243 S.W.3d 807, 821 (Tex.App.—Fort Worth 2007, no pet.); see TEX. FAM. CODE ANN. § 263.307(b)(10) (providing as a consideration

18

the family's willingness "to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision").

The trier of fact may compare the parents' and the Department's permanency plans in determining the best interest of the child and consider whether the respective plans and expectations of each party are realistic or weak and ill-defined. See In re D.O., 851 S.W.2d at 358. Further, the trier of fact may consider the possible consequences of a decision not to terminate. See id.

H.R. is to be adopted into the home with her younger brother; the Department has expressed its goal that J.R., L.R., and B.R. be adopted as a sibling group. The record shows that the foster families currently make arrangements so that all five siblings maintain contact by phone and in person. The Department has taken measures to ensure that the siblings remain bonded. On the other hand, Johnny and Christina have presented no evidence regarding any plans for the children or goals for the family. During their last contact with the Department, Johnny and Christina would not even disclose to the Department where they were living. They have completed no services and failed to maintain regular visitation. Based on that evidence, the trial court could have concluded that Johnny and Christina have made no plans for the children.

So, while the Department explained that it cannot guarantee that J.R., L.R., and B.R. will be adopted into a single home, in relative terms, the Department's plans appear to be more developed and more directed at protecting the physical and emotional well-being of the children. And, while Johnny and Christina complain on appeal that separating the five siblings even into only two homes is not in the children's

19

best interest, the evidence is such that the trial court could have soundly determined that being adopted separately, though not ideal, is far better for their emotional and physical well-being than (1) the "unthinkable" development, according to Lefevre, of being returned to the care and custody of parents who have wholly failed to care for their physical and emotional needs or (2) the "very, very sad" prospect of remaining in foster care with no chance at being adopted into a stable home while the Department continues to try to offer services to biological parents who have expressed little to no interest in completing services required to secure reunification of their family.

Johnny and Christina maintained only sporadic and increasingly infrequent visitation with the girls, another consideration in the best interest determination. Dowell v. Dowell, 276 S.W.3d 17, 22 (Tex.App.—El Paso 2008, no. pet.). Even after years of Department intervention, they have offered no excuse for their acts or omissions. In fact, the Department noted they denied any deficiency in their parenting skills. Failure to maintain regular contact with the girls and refusal to even acknowledge parental deficiencies are relevant to a determination that termination of parental rights serves the children's best interest. Based on the evidence before it, the trial court could have found by clear and convincing evidence that termination of the parent-child relationship was in the children's best interest. Legally and factually sufficient evidence supports such a finding, and we overrule Johnny's and Christina's issues asserting otherwise.

Clear and convincing evidence supports the following three findings: (1) the circumstances of involved parties had materially and substantially changed since the rendition of the 2009 Order; (2) Johnny and Christina placed the four girls or allowed

them to remain in conditions or surroundings which endangered their physical and emotional well-being; and (3) termination of Johnny's and Christina's parental rights was in the best interest of J.R., L.R., B.R., and H.R. Accordingly, we overrule Johnny's and Christina's issues challenging the sufficiency of the evidence. Because the Department need only prove one predicate act under section 161.001(1), we need not address their issues challenging the evidence supporting other statutory grounds for termination. See In re A.V., 113 S.W.3d at 362; see also TEX. R. APP. P. 47.1.

## Conclusion

Having overruled Johnny's and Christina's issues, we affirm the trial court's order terminating their parental rights to children, J.R., L.R., B.R., and H.R.

Mackey K. Hancock
Justice

21