# NO. 12-17-00334-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE INTEREST OF* | § | *APPEAL FROM THE 273RD* |
| *A.D., A.H. AND A.T.,* | § | *JUDICIAL DISTRICT COURT* |
| *CHILDREN* | § | *SABINE COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

C.T.T. appeals the termination of his parental rights. In seven issues, he argues that he was denied procedural due process, and challenges the legal and factual sufficiency of the evidence to support the order of termination. We reverse, render in part, and remand, in part.

## BACKGROUND

A.M.[1] is the mother of A.D., A.H., and A.T. S.D.D.[2] is the father of A.D. and C.T.T. is the father of A.H. and A.T. On March 16, 2016, the Department of Family and Protective Services (the Department) filed an original petition for protection of A.D., A.H., and A.T., for conservatorship, and for termination of A.M.'s, S.D.D.'s, and C.T.T.'s parental rights. The Department was appointed temporary managing conservator of the children, A.M. was appointed temporary possessory conservator of the children with limited rights and duties, and S.D.D. was appointed temporary possessory conservator of A.D. with limited rights and duties.

---

[1] The trial court found, by clear and convincing evidence, that A.M. executed an unrevoked or irrevocable affidavit of relinquishment of parental rights to A.D., A.H., and A.T. as provided by Chapter 161, Texas Family Code. The trial court also found that termination of the parent-child relationship between A.M. and the children was in the children's best interest. Therefore, the trial court ordered that the parent-child relationship between A.M., A.D., A.H., and A.T. be terminated. The mother is not a party to this appeal.

[2] The trial court found that appointment of a parent as managing conservator would not be in the best interest of A.D. and appointed a non-parent as permanent managing conservator of the child. The father, S.D.D., was appointed possessory conservator of A.D. with possession and access as agreed between the non-parent managing conservator and the father.

At the conclusion of the trial on the merits, the trial court found that C.T.T. is, and hereby adjudicated him to be, the father of A.H. and A.T. Further, the trial court found, by clear and convincing evidence, that C.T.T. had engaged in one or more of the acts or omissions necessary to support termination of his parental rights under subsections (D), (E), (N) and (O) of Texas Family Code Section 161.001(b)(1). The trial court also found that termination of the parent-child relationship between C.T.T, A.H., and A.T. was in the children's best interest. Based on these findings, the trial court ordered that the parent-child relationship between C.T.T., A.H., and A.T. be terminated. This appeal followed.

## TERMINATION OF PARENTAL RIGHTS

Involuntary termination of parental rights embodies fundamental constitutional rights. *Vela v. Marywood*, 17 S.W.3d 750, 759 (Tex. App.–Austin 2000), *pet. denied per curiam*, 53 S.W.3d 684 (Tex. 2001); *In re J.J.*, 911 S.W.2d 437, 439 (Tex. App.–Texarkana 1995, writ denied). Because a termination action "permanently sunders" the bonds between a parent and child, the proceedings must be strictly scrutinized. *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976); *In re Shaw*, 966 S.W.2d 174, 179 (Tex. App.–El Paso 1998, no pet.).

Section 161.001 of the family code permits a court to order termination of parental rights if two elements are established. TEX. FAM. CODE ANN. § 161.001 (West Supp. 2018); *In re J.M.T.*, 39 S.W.3d 234, 237 (Tex. App.–Waco 1999, no pet.). First, the parent must have engaged in any one of the acts or omissions itemized in the second subsection of the statute. TEX. FAM. CODE ANN. § 161.001(b)(1) (West Supp. 2018); *Green v. Tex. Dep't of Protective & Regulatory Servs.*, 25 S.W.3d 213, 219 (Tex. App.–El Paso 2000, no pet.); *In re J.M.T.*, 39 S.W.3d at 237. Second, termination must be in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b)(2) (West Supp. 2018); *In re J.M.T.*, 39 S.W.3d at 237. Both elements must be established by clear and convincing evidence, and proof of one element does not alleviate the petitioner's burden of proving the other. TEX. FAM. CODE ANN. § 161.001; *Wiley*, 543 S.W.2d at 351; *In re J.M.T.*, 39 S.W.3d at 237.

The clear and convincing standard for termination of parental rights is both constitutionally and statutorily mandated. TEX. FAM. CODE ANN. § 161.001; *In re J.J.*, 911 S.W.2d at 439. Clear and convincing evidence means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."

TEX. FAM. CODE ANN. § 101.007 (West 2014). The burden of proof is upon the party seeking the deprivation of parental rights. *In re J.M.T.*, 39 S.W.3d at 240.

## STANDARD OF REVIEW

When confronted with both a legal and factual sufficiency challenge, an appellate court must first review the legal sufficiency of the evidence. *Glover v. Tex. Gen. Indem. Co.*, 619 S.W.2d 400, 401 (Tex. 1981); *In re M.D.S.*, 1 S.W.3d 190, 197 (Tex. App.–Amarillo 1999, no pet.). In conducting a legal sufficiency review, we must look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its findings were true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We must assume that the fact finder settled disputed facts in favor of its finding if a reasonable fact finder could do so and disregard all evidence that a reasonable fact finder could have disbelieved or found incredible. *Id*.

The appropriate standard for reviewing a factual sufficiency challenge to the termination findings is whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the petitioner's allegations. *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). In determining whether the fact finder has met this standard, an appellate court considers all the evidence in the record, both that in support of and contrary to the trial court's findings. *Id*. at 27-29. Further, an appellate court should consider whether disputed evidence is such that a reasonable fact finder could not have reconciled that disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266. The trier of fact is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *Nordstrom v. Nordstrom*, 965 S.W.2d 575, 580 (Tex. App.–Houston [1st Dist.] 1997, pet. denied).

## TERMINATION UNDER SUBSECTIONS 161.001(b)(1)(D), (E), (N), AND (O)

In his second, third, fifth, and sixth issues, C.T.T. argues the evidence is legally and factually insufficient to terminate his parental rights pursuant to subsections (D), (E), (N), and (O) of Texas Family Code Section 161.001(b)(1). We will address each subsection in turn.

### Subsection (D)

The court may order termination of the parent-child relationship under subsection (D) if the court finds by clear and convincing evidence that the parent has knowingly placed or

knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child. TEX. FAM. CODE ANN. § 161.001(1)(D) (West Supp. 2018). "Endanger" means to expose to loss or injury or to jeopardize. *Tex. Dep't of Human Svcs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re D.M.*, 58 S.W.3d 801, 811 (Tex. App.—Fort Worth 2001, no pet.). It is not necessary that the endangering conduct be directed at the child or that the child actually suffers injury. *Boyd*, 727 S.W.2d at 533; *In re J.J.*, 911 S.W.2d at 440.

Under subsection (D), the relevant time frame to determine whether there is clear and convincing evidence of endangerment is before the child was removed. *Ybarra v. Tex. Dep't of Human Servs.*, 869 S.W.2d 574, 577 (Tex. App.—Corpus Christi 1993, no pet.). Subsection (D) addresses the child's surroundings and environment. *In re N.R.*, 101 S.W.3d 771, 775–76 (Tex. App.—Texarkana 2003, no pet.). The Department must show that the child's living conditions pose a real threat of injury or harm. *In re N.R.*, 101 S.W.3d at 776; *Ybarra*, 869 S.W.2d at 577. Further, there must be a connection between the conditions and the resulting danger to the child's emotional or physical well-being. *Ybarra*, 869 S.W.2d at 577–78. Finally, several Texas courts have recognized that the possibility of a parent's incarceration can negatively impact a child's living environment and well-being and may be sufficient to show endangerment. *In re S.M.L.*, 171 S.W.3d 472, 479 (Tex. App.—Houston [14th Dist.] 2005, no pet.) ("When parents are incarcerated, they are absent from the child's daily life and are unable to provide support, and when parents like appellant repeatedly commit criminal acts that subject them to the possibility of incarceration, that can negatively impact a child's living environment and emotional well-being"); *In re C.L.C.*, 119 S.W.3d 382, 393 (Tex. App.—Tyler 2003, no pet.); *In re S.D.*, 980 S.W.2d 758, 763 (Tex. App.—San Antonio 1998, pet. denied).

In this case, the Department failed to present any evidence that C.T.T. was aware that A.H. and A.T. were being placed in a dangerous environment or living conditions. Ethel Rogers, the Department's caseworker, testified that C.T.T. has been incarcerated for the "entire duration" of the case involving A.H. and A.T. She stated that C.T.T. was incarcerated before the case began and was not involved with, or the reason for, the children's removal from their home. Nor did she agree that C.T.T. placed the children "in a position of danger."

As noted above, involuntary termination proceedings implicate fundamental constitutional rights. *See Vela*, 17 S.W.3d at 759; *In re J.J.*, 911 S.W.2d at 439. Due to the magnitude and permanence of termination of parental rights, the Department's burden of proof is by clear and

4

convincing evidence. *See* TEX. FAM. CODE ANN. § 161.001(b)(1). Here, the Department failed to meet that burden with respect to subsection (D). Moreover, in the absence of other endangering conduct, C.T.T.'s incarceration is insufficient to support termination under subsection (D). *See In re S.M.L.*, 171 S.W.3d at 478 (noting imprisonment, alone, does not suffice to support termination under subsection (D)). Reviewing all of the evidence in the light most favorable to the finding, we conclude a reasonable factfinder could not have formed a firm belief or conviction that C.T.T. knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered their physical or emotional well-being, and therefore, the evidence of endangerment under subsection (D) is legally insufficient. *See id.* § 161.001(b)(1)(D); *In re J.F.C.*, 96 S.W.3d at 266. Because the evidence is legally insufficient to support the trial court's finding that C.T.T. violated subsection (D) of Texas Family Code Section 161.001(b)(1), we do not address the factual sufficiency of the evidence. Accordingly, we sustain C.T.T.'s second issue.

**Subsection (E)**

The court may order termination of the parent-child relationship under subsection (E) if it finds by clear and convincing evidence that the parent has engaged in conduct, or knowingly placed the child with persons who engaged in conduct, that endangers the physical or emotional well being of the child. TEX. FAM. CODE ANN. § 161.001(b)(1)(E) (West Supp. 2018). Subsection (E) requires us to look at the parent's conduct alone, including actions, omissions, or the parent's failure to act, and termination must be based on more than a single act or omission. *In re D.J.*, 100 S.W.3d 658, 662 (Tex. App.—Dallas 2003, pet. denied); *In re D.M.*, 58 S.W.3d at 811; *In re D.T.*, 34 S.W.3d 625, 634 (Tex. App.—Fort Worth 2000, pet. denied). A voluntary, deliberate, and conscious "course of conduct" by the parent that endangers the child's physical and emotional well being is required. *In re D.M.*, 58 S.W.3d at 812; *In re D.T.*, 34 S.W.3d at 634. Further, the conduct may occur before the child's birth and both before and after the child has been removed by the Department. *Walker v. Tex. Dep't of Family & Protective Srvs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

Imprisonment alone does not constitute an endangering course of conduct but is properly considered with respect to endangerment. *Boyd*, 727 S.W.2d at 533–34. Though imprisonment of a parent is insufficient, standing alone, to constitute "engaging in conduct which endangers the emotional or physical well-being of the child," it is a factor to consider on the issue of endangerment. *See id.*; *In re M.D.S.*, 1 S.W.3d at 199.

In this case, the Department presented evidence of C.T.T.'s convictions and current imprisonment. The Department stated that C.T.T. had at least twenty-four criminal charges made against him from 1998 to 2013, but Rogers did not know if he was convicted of any of those charges. In February 2013, C.T.T. was convicted of aggravated assault, a second degree felony, and assault against a public servant, a third degree felony, and was sentenced to eight years of imprisonment for both offenses, to run concurrently. At the time of trial, C.T.T. was in prison and had been for almost five years. Further, Rogers agreed that C.T.T. did not engage in conduct or knowingly place the children with persons who engaged in conduct that endangered the children because he was in prison.

There was some evidence that C.T.T. may have committed domestic violence. Rogers testified that there was an "entry" of violence between C.T.T. and A.M. Tassie Ferrell, the Department caseworker, testified that A.D. told her about "violence" between A.M. and C.T.T. and drug use. Ferrell stated that any incident occurred before the children were removed. However, neither caseworker offered additional elaboration or evidence on the "violence" or drug use.

As noted above, involuntary termination proceedings implicate fundamental constitutional rights. *See Vela*, 17 S.W.3d at 759; *In re J.J.*, 911 S.W.2d at 439. Due to the magnitude and permanence of termination of parental rights, the Department's burden of proof is by clear and convincing evidence. *See* TEX. FAM. CODE ANN. § 161.001(b)(1). Here, the Department failed to meet that burden with respect to subsection (E). Specifically, C.T.T.'s imprisonment, alone, is insufficient to constitute an endangering course of conduct. *See Boyd*, 727 S.W.2d at 533–34; *In re M.D.S.*, 1 S.W.3d at 199. Further, the evidence of C.T.T.'s possible "violence" and drug use, without any additional facts or elaboration, does not constitute an endangering "course of conduct." *See In re D.M.*, 58 S.W.3d at 812; *In re D.T.*, 34 S.W.3d at 634. Reviewing all of the evidence in the light most favorable to the finding, we conclude a reasonable factfinder could not have formed a firm belief or conviction that C.T.T. engaged in conduct, or knowingly placed the children with persons who engaged in conduct, that endangered their physical or emotional well being, and therefore, the evidence of endangerment under subsection (E) is legally insufficient. *See id.* § 161.001(b)(1)(E); *In re J.F.C.*, 96 S.W.3d at 266. Because the evidence is legally insufficient to support the trial court's finding that C.T.T. violated subsection (E) of Texas Family

Code Section 161.001(b)(1), we do not address the factual sufficiency of the evidence. Accordingly, we sustain C.T.T.'s third issue.

**Subsection (N)**

The court may order termination of the parent-child relationship under subsection (N) if it finds by clear and convincing evidence that the parent has constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department for not less than six months, and (i) the Department has made reasonable efforts to return the child to the parent; (ii) the parent has not regularly visited or maintained significant contact with the child; and (iii) the parent has demonstrated an inability to provide the child with a safe environment. TEX. FAM. CODE ANN. § 161.001(b)(1)(N) (West Supp. 2018). If the evidence is legally insufficient on any one of these elements, the termination finding cannot be sustained. *See In re D.T.*, 34 S.W.3d at 633. Moreover, incarceration does not render subsection (N) inapplicable simply because a parent is incarcerated. *In re D.S.A.*, 113 S.W.3d 567, 574 (Tex. App.—Amarillo 2003, no pet.).

In his brief, C.T.T. does not dispute the first or third elements of subsection (N). However, he disputes the second element, specifically, that he has not regularly visited or maintained significant contact with the children. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(N) (ii). The evidence at trial showed that C.T.T. maintained contact with Rogers through letters, asking about the children. Rogers, in turn, sent him letters and photographs of the children. In her opinion, "from where [C.T.T.'s] at, that's about all you can do." In the Department's permanency reports, it acknowledged that C.T.T. was incarcerated and, thus, no visitation with the children was organized. Moreover, the children, ages five and six, are described as being autistic, with severe delays and impairments. Incarceration does not render it impossible for the parent to maintain significant contact with the child. *Id.* As such, C.T.T. maintained contact with the Department's caseworker, seemingly pursuing a relationship with his special needs children as much as possible while incarcerated. *See id.*

Therefore, reviewing all of the evidence in the light most favorable to the finding, we conclude a reasonable factfinder could not have formed a firm belief or conviction that C.T.T. constructively abandoned the children because he did not maintain significant contact with the children and, therefore, the evidence of abandonment under subsection (N) is legally insufficient. *See id.* § 161.001(b)(1)(N); *In re J.F.C.*, 96 S.W.3d at 266. Because the evidence is legally

insufficient to support the trial court's finding that C.T.T. violated subsection (N) of Texas Family Code Section 161.001(b)(1), we do not address the factual sufficiency of the evidence. Accordingly, we sustain C.T.T.'s fifth issue.

## Subsection (O)

The court may order termination of the parent-child relationship under subsection (O) if it finds by clear and convincing evidence that the parent failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department for not less than nine months as a result of the child's removal from the parent for the abuse or neglect of the child. TEX. FAM. CODE ANN. § 161.001(b)(1)(O) (West Supp. 2018). Generally speaking, Texas courts have taken a rather strict approach to subsection (O)'s application. *See, e.g.*, **In re P.N.M.**, No. 11-08-00080-CV, 2009 WL 714190, at *3–4, (Tex. App.—Eastland Mar. 19, 2009, no pet.) (mem. op.). Subsection (O) looks only for a parent's failure to comply with a court order, without reference to quantity of failure or degree of compliance. *See* **In re J.S.**, 291 S.W.3d 60, 67 (Tex. App.—Eastland 2009, no pet.). It does not provide a means of evaluating partial or substantial compliance with a plan. *Id.* Subsection (O) also does not "make a provision for excuses" for the parent's failure to comply with the family service plan. *Id.* (quoting **In re T.N.F.**, 205 S.W.3d 625, 631 (Tex. App.—Waco 2006, pet. denied)). The burden of complying with a court order is on the parent, even if the parent is incarcerated. *See* **Thompson v. Tex. Dep't of Family & Protective Servs.**, 176 S.W.3d 121, 127 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) (overruled on other grounds); **K.C. v. Tex. Dep't of Family & Protective Servs.**, No. 30-17-00184-CV, 2017 WL 3585255, at *2 (Tex. App.—Austin Aug. 17, 2017, no pet.) (mem. op.).

C.T.T.'s final family plan of service required him to (1) maintain contact with his current caseworker or supervisor; (2) obtain and maintain stable housing and legal employment; (3) complete a psychological evaluation and follow any recommendations; (4) complete DNA testing regarding A.H.; (5) be supportive of A.T.'s and A.H.'s placement; (6) follow all written or verbal instructions ordered by the trial court; (7) notify the Department caseworker if his contact or location information changes within twenty-four hours; and (8) once he is released from prison, contact the Department caseworker to set up services. At trial, Rogers stated that C.T.T. maintained contact with the Department, his contact or location information has not changed, and

8

he had no services at that time. Rogers stated that C.T.T. never told her whether he was supportive of the children's placement nor has she received any written or verbal instructions from the trial court. Finally, she said that C.T.T. has done everything in his service plan that he could do while incarcerated.

The evidence shows that the only conditions of the service plan that C.T.T. may not have complied with were the requirements that he obtain and maintain stable housing and legal employment, and obtain a psychological evaluation. The record contains some evidence that he could not have complied with these requirements. Rogers testified that C.T.T. would not be able to obtain and maintain stable, safe, and appropriate housing and legal employment while incarcerated. In response to the question of whether C.T.T. completed a psychological evaluation while in prison, Rogers stated that she "never know[s] what [ ] prisons offer. They all have different things." She also testified that C.T.T. complied with his service plan "as far as he is able to under the circumstance," presumably recognizing the limits of his incarceration.

From this evidence, the trial court could have determined that C.T.T. failed to complete his service plan because he did not obtain housing, employment, and a psychological evaluation. Therefore, we hold that the evidence, viewed in the light most favorable to the trial court's finding, was sufficiently clear and convincing that a reasonable trier of fact could have formed a firm belief or conviction that C.T.T. failed to comply with the provisions of a court order that specifically established the actions necessary for him to obtain the return of the children. *See In re J.F.C.*, 96 S.W.3d at 266. Thus, we conclude that the evidence is legally sufficient to support termination under subsection (O) of Texas Family Code Section 161.001(b)(1).

However, we must determine if the evidence is factually sufficient to support termination. First, we note that incarceration is not a legal excuse or defense to a parent's failure to comply with a service-plan order. *See K.C.*, 2017 WL 3585255, at *2. A parent's incarceration is a fact that the factfinder may consider in determining compliance under subsection (O). *See In re S.M.R.*, 434 S.W.3d 576, 584 (Tex. 2014) ("[W]hether a parent has done enough under the family-service plan to defeat termination under subpart (O) is ordinarily a fact question."); *In re A.J.L.*, No. 04-14-00013-CV, 2014 WL 4723129, at *5 (Tex. App.–San Antonio Sept. 24, 2014, no pet.) (mem. op.) (holding that record did not support termination where evidence showed that, "up until the time Mother was incarcerated for a violation of her probation, she was in compliance with her service plan" and no evidence was presented that services were available to mother while

9

incarcerated). Further, involuntary termination of parental rights embodies fundamental constitutional rights. *See Vela*, 17 S.W.3d at 759. Due to the magnitude and permanence of termination of parental rights, the Department's burden of proof is by clear and convincing evidence. *See* TEX. FAM. CODE ANN. § 161.001(b)(1).

From the evidence discussed above, Rogers recognized that C.T.T. could not obtain stable housing or legal employment while incarcerated. She also did not know if the prison offered the opportunity for C.T.T. to obtain a psychological evaluation. Rogers testified that C.T.T. complied with his service plan "as far as he [was] able to under the circumstance." We note that the service plan does not require C.T.T. to work services until after he is released from prison. No such provision was indicated in the service plan's requirement for housing, employment, or a psychological evaluation. We find it unreasonable for C.T.T. to be required to satisfy these provisions from prison, recognizing the impossibility of him being able to obtain housing, employment, or a psychological evaluation while still incarcerated. From this evidence, we conclude that a reasonable fact finder could not have formed a firm belief or conviction that C.T.T. failed to comply with the provisions of a court order that specifically established the actions necessary for him to obtain the return of the children. *See In re C.H.*, 89 S.W.3d at 25. Therefore, we hold that the evidence is factually insufficient to support the trial court's finding that C.T.T. violated subsection (O). *See id.* § 161.001(b)(1)(O); *In re J.F.C.*, 96 S.W.3d at 266. Accordingly, we sustain C.T.T.'s sixth issue.

### BEST INTERESTS OF THE CHILD

In his seventh issue, C.T.T. argues the evidence is legally and factually insufficient to support a finding that termination of his parental rights is in the children's best interest. In determining the best interest of the child, a number of factors have been considered, including (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals; (6) the plans for the child by these individuals; (7) the stability of the home; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

10

The family code also provides a list of factors that we will consider in conjunction with the above-mentioned *Holley* factors. *See* TEX. FAM. CODE ANN. § 263.307(b) (West Supp. 2018). These include (1) the child's age and physical and mental vulnerabilities; (2) the magnitude, frequency, and circumstances of the harm to the child; (3) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (4) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (5) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (6) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (7) whether the child's family demonstrates adequate parenting skills; and (8) whether an adequate social support system consisting of an extended family and friends is available to the child. *See id.* § 263.307(b)(1), (3), (6), (8), (10), (11), (12), (13).

The evidence need not prove all statutory or *Holley* factors in order to show that termination of parental rights is in a child's best interest. *See Holley*, 544 S.W.2d at 372; *In re J.I.T.P.*, 99 S.W.3d 841, 848 (Tex. App.–Houston [14th Dist.] 2003, no pet.). In other words, the best interest of the child does not require proof of any unique set of factors nor limit proof to any specific factors. *In re D.M.*, 58 S.W.3d at 814. Undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the child's best interest. *In re M.R.J.M.*, 280 S.W.3d 494, 507 (Tex. App.—Fort Worth 2009, no pet.). But the presence of scant evidence relevant to each factor will not support such a finding. *Id.* And the fact that a parent is imprisoned does not automatically establish that termination of his parental rights is in the child's best interest. *In re S.R.L.*, 243 S.W.3d 232, 236 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (citing *In re C.T.E.*, 95 S.W.3d 462, 466 (Tex. App.—Houston [1st Dist.] 2002, pet. denied)).

## Analysis

The evidence discussed above shows that C.T.T. was incarcerated beginning in February 2013, before the children were removed from the home, and has been incarcerated throughout this case. C.T.T. had also maintained contact with the Department caseworkers and complied with his service plan to the extent that he was able to do so while in prison.

Regarding the children, they are described as being autistic, having severe disabilities, and requiring 24/7 supervision. The Department noted in a permanency report that A.H. and A.T. were happy children and that A.H. was "somewhat non-verbal." Both children had severe intellectual delays, social deficits, language impairments, and sensory processing issues. The Department stated that A.H. and A.T. would need some form of adult supervision throughout their lifetime. At trial, Rogers stated that both children were still in diapers, were currently living at Mission Road in San Antonio, akin to a residential treatment facility, and doing well. Rogers stated that the children have their "little routine," and as long as it is not interrupted, "they're good." Rogers believed that someone would be able to adopt both children with their special needs.

Regarding C.T.T., he did not appear at trial because he did not want to miss his position in class in order to receive his associates degree in air conditioning and heating. Rogers is concerned that C.T.T. does not have a support system when he is released from prison. Nor has he told her where he would live or how he would take care of the children if he were released from prison. According to Rogers and Ferrell, they are mostly concerned about C.T.T.'s criminal record and his ability to take care of the children. Rogers was also concerned that it would take months or a "long period of time" for C.T.T. to work a service plan and have the children placed with him. Ferrell testified that it would not be impossible for C.T.T. to take care of the children, but he would have to educate himself on how to take care of them once he is released. Rogers and Ferrell believed it was in the best interest of the children for C.T.T.'s parental rights to be terminated.

According to the trial transcript, the entire testimony of the two witnesses for the Department comprised a mere twenty-three pages. There was no evidence regarding the potential adoptive home for the children, C.T.T.'s parenting abilities, the programs to assist C.T.T., or the stability of C.T.T.'s home or the potential placement for the children. As noted in Ferrell's testimony, she and Rogers's only concern appeared to be C.T.T.'s criminal record, and the possibility that he would not be able to take care of two special needs children. Neither expressed any concern that C.T.T. may harm the children because of his criminal record or that he could not learn to take care of the children, only that it may take him a long time to do so.

Therefore, viewing the above evidence relating to the statutory and *Holley* factors in the light most favorable to the trial court's best interest finding, we conclude that a reasonable fact finder could not have formed a firm belief or conviction that termination of C.T.T.'s parental rights is in the children's best interest, and therefore, the evidence of best interest under Section

12

161.001(b)(2) is legally insufficient. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *In re J.F.C.*, 96 S.W.3d at 266. We note the presence of scant evidence relevant to each factor to support the trial court's finding. *See In re M.R.J.M.*, 280 S.W.3d at 507. Because the evidence is legally insufficient to support the trial court's finding that termination of C.T.T.'s parental rights is in the best interest of the children, we do not address the factual sufficiency of the evidence. Accordingly, we sustain C.T.T.'s seventh issue.

## CONCLUSION

Having sustained C.T.T.'s second, third, fifth, sixth, and seventh issues, we *reverse* that portion of the trial court's order terminating C.T.T.'s parental rights, *render* partial judgment denying the Department's original petition to the extent that it sought termination of C.T.T.'s parental rights to A.H. and A.T. under subsections (b)(i)(D), (E), and (N), and subsection (b)(2), and *remand* the case for further proceedings consistent with this opinion.[3]

JAMES T. WORTHEN
Chief Justice

Opinion delivered November 28, 2018.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

---

[3] Because we have concluded that the evidence is legally insufficient to support termination of C.T.T.'s parental rights under subsections (b)(1)(D), (b)(1)(E), (b)(1)(N), and subsection (b)(2), and factually insufficient to support termination of C.T.T.'s parental rights under subsection (b)(1)(O), we need not address his first issue (denial of procedural due process) or his fourth issue (whether termination under subsections (N) and (O) pertained to him). *See* TEX. R. APP. P. 47.1.



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**NOVEMBER 28, 2018**

**NO. 12-17-00334-CV**

**IN THE INTEREST OF A.D., A.H. AND A.T., CHILDREN**

Appeal from the 273rd District Court
of Sabine County, Texas (Tr.Ct.No. 13,212)

THIS CAUSE came to be heard on the appellate record and the briefs filed herein, and the same being considered, because it is the opinion of this court that there was error in the termination order of the court below, it is ORDERED, ADJUDGED and DECREED by this court that the termination order be **reversed,** partial judgment denying the Department's original petition to the extent that it sought termination of C.T.T.'s parental rights to A.H. and A.T. be **rendered**, and the cause **remanded** to the trial court **for further proceedings** in accordance with the opinion of this court; and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*